IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MADELYN CASILAO; | ) | |
| (2) HARRY LINCUNA; and | ) | |
| (3) ALLAN GARCIA, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 5:17-cv-00800-M |
| (1) HOTELMACHER LLC d/b/a HOLIDAY INN EXPRESS; | ) ) ) | |
| (2) STEAKMACHER, LLC d/b/a MONTANA MIKE'S STEAKHOUSE; | ) ) | |
| (3) SCHUMACHER INVESTMENTS, LLC d/b/a WATER ZOO; | ) ) | |
| (4) APEX USA, INC.; | ) | |
| (5) WALTER SCHUMACHER; and | ) | |
| (6) CAROLYN SCHUMACHER | ) ) | |
| Defendants. | ) | |

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTIONS TO DISMISS AND/OR STRIKE PLAINTIFFS' CLASS ACTION COMPLAINT**

    Kevin R. Donelson, OBA #12647
    C. Eric Shephard, OBA # 22299
    Kim Tran, OBA # 21384
    A. Wayne Billings, OBA #31483
    FELLERS, SNIDER, BLANKENSHIP,
      BAILEY & TIPPENS, P.C.
    100 North Broadway, Suite 1700
    Oklahoma City, OK 73102-9211
    Telephone:  (405) 232-0621
    Facsimile:   (405) 232-9659
    ***Attorneys for Defendants***

November 3, 2017

Defendants submit this Combined Reply Brief in support of their Motions to Dismiss and/or Strike Plaintiffs' Class Action Complaint [Dkt. 28-33] (the "Motions") and request that the Motions be granted. In support, Defendants state as follows:

## ARGUMENT AND AUTHORITY

**I.   Plaintiffs Have Failed to Plausibly Allege any "Threats" or "Harms" Beyond the Restrictions Inherent in the H-2B Visa Program.**

The only "scheme" alleged in Plaintiffs' Complaint is the H-2B regulatory framework itself. Each of the facts and circumstances Plaintiffs identify as the bases of their claims were created by the H-2B visa program, not by any words or actions of Defendants. Every H-2B worker voluntarily (1) takes a significant financial risk in coming to the United States for short-term employment, (2) accepts an immigration status that is entirely dependent upon the sponsoring employer, and (3) travels to a foreign nation whose culture, language, customs, and legal systems are unfamiliar. Plaintiffs would have this Court rule that, as a result of circumstances present in **every** H-2B worker's case, **any** wage or employment dispute involving an H-2B worker constitutes a plausible basis for a human trafficking claim. Neither the case law nor the text of the TVPRA supports this extremely overbroad construction.

For instance, the Ninth Circuit has noted that "not all bad employer-employee relationships or even bad employer-immigrant . . . relationships will constitute forced labor." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). Likewise, the Sixth Circuit has cautioned against construing the TVPRA too broadly so as to transform

1

ordinary matters into the federal crime of forced labor. *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014).

Courts must be careful to distinguish between "merely abusive employers" and those who "deliberately sought to compel forced labor." *United States v. Bradley*, 390 F.3d 145, 155 (1st Cir. 2004), vacated on other grounds, 545 U.S. 1101 (2005). Thus, Plaintiffs must allege facts showing something more than mere wage and/or benefit claims, and they cannot simply rely on their H-2B status as a substitute for actual facts demonstrating the coercion and abuse the TVPRA was designed to combat.

Plaintiffs' allegations are analogous to those at issue in *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017). In *Muchira*, the plaintiff worked for a Saudi family in Saudi Arabia, where she was subjected to strict "house rules"—*i.e.*, not leaving the home without a family member, not speaking to neighbors, and not sitting down or taking breaks during work hours. 850 F.3d at 608. Muchira eventually moved to the United States to work for another member of the Saudi family. For the move, the parties entered into an employment contract, in which defendants promised (1) to pay Muchira $10 per hour, plus any overtime; (2) to pay for all Muchira's transportation, airfare, and medical costs; (3) that Muchira could attend Christian church services; and (4) that Muchira would be treated fairly and would not be required to stay past work hours. *Id.* at 608-609. Under these terms, Muchira agreed to move to the U.S. on a six-month guest worker visa (with all its attendant restrictions).

However, when Muchira came to the U.S., she claimed she was verbally abused, overworked, denied the promised church attendance, and denied the salary she allegedly

contracted to receive. *Id.* at 612-13. In essence, Muchira claimed—just as Plaintiffs claim in the present case—that she did not receive what she was promised when she agreed to come to the United States. Muchira sued under the TVPRA.

The Fourth Circuit rejected all of Muchira's TVPRA claims. In carefully reviewing the case law construing 18 U.S.C. § 1589, the court noted the following:

> Typically, therefore, "forced labor" situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.

*Id.* at 618-19 (collecting cases, internal quotations omitted). Finding Muchira had "misapprehend[ed] the scope of the forced labor statute" (*id.* at 620), the court held that Muchira had failed to show something more than the fact that she did not receive the promised bargain. *Id.* at 621-22.[1] Muchira's alleged psychological maladies related to her "bad employer-immigrant" relationship were insufficient to establish that the Saudi family had knowingly "forced her to remain in their employ against her will . . . when she otherwise would have left." *Id.* at 622. Likewise, the court rejected Muchira's claim for "abuse or threatened abuse of law or legal process," because Muchira had failed to

---

[1] The Fourth Circuit considered Muchira's unique characteristics (age, familiarity with English, knowledge of employment terms, etc.) in assessing her vulnerability to coercion. *Id.* at 620. The court noted the appropriate standard is a "hybrid," taking into account both objective and subjective factors. *Id.* at 618. Thus, there is no merit to Plaintiffs' suggestion that their individual vulnerabilities can be determined on a class-wide basis, as opposed to an individualized inquiry into each Plaintiff's particular situation.

3

present something "more than evidence that a defendant violated other laws of this country or encouraged others to do the same" as a means of coercion. *Id*. at 622-23.

The same is true in the present case. The only "coercion" to which Plaintiffs have allegedly been subjected was the H-2B visa restrictions. Even if Plaintiffs could plausibly show they did not receive the bargain they were promised, they may not transform such ordinary wage claims into TVPRA claims simply because Plaintiffs came to the United States under the highly restrictive H-2B Visa program. As was true in *Muchira*, "the forced labor provisions of the TVPA are not intended to redress every bad employment relationship involving immigrants[.] . . . They are intended to effectuate the constitutional prohibitions against slavery and involuntary servitude, by criminalizing the act of coercing persons into providing labor and services against their will[.]" *Id.* at 625. Plaintiffs do not allege any facts plausibly showing such coercion. As Plaintiffs have failed to allege something more than mere wage or benefit claims arising in the context of H-2B visas, their TVPRA claims should be dismissed.

## II. Plaintiffs Fail to State Claims for Breach of Contract Against Each Defendant.

Plaintiffs' contract claims fail to adequately assert factual allegations that support the plausible formation of a contract between them and all of the Defendants named in this case. *Digital Design Group, Inc. v. Info. Builders, Inc.*, 2001 OK 21, 24 P.3d 834, 843. "Generally, a contract binds no one but the parties to it, and an action on a contract cannot be maintained against a person who is not a party to the contract." *Ayres v. AG Processing Inc.*, 345 F. Supp. 2d 1200, 1215 (D. Kan. 2004); *see also* 17A

4

Am.Jur.2d *Contracts* § 412 (2004). Here, Plaintiffs' Complaint collectively alleges breach of contract claims against all six Defendants under the general premise that Plaintiffs were not paid what was promised to them in their contracts. Plaintiffs assert that the contracts at issue were established by the offer letters received by each Plaintiff, the terms and conditions provided for in their temporary labor certifications and accompanying attestations through the H-2B program, and the POEA forms between Defendants and the POEA for which the Plaintiffs were allegedly third party beneficiaries. Even if this Court were to find this premise and these three theories sufficient for the purposes of surviving a motion to dismiss, breach of contract claims do not exist against one that is not bound by the contract.

A review of Plaintiffs' Complaint and the factual allegations made against all the Defendants show that Plaintiffs have failed to allege sufficient facts to establish the existence of a binding contract between the Plaintiffs and each named Defendant. First, the documents that Plaintiffs allege formed the contracts at issue are only between two parties – the worker and their respective employer. Any contract allegedly created by these documents can only bind the Defendants that were a party to those contracts.

For instance, the offer letters were issued only by Defendants Steakmacher, Hotelmacher, and Schumacher Investments. And specifically, with respect to the named Plaintiffs in this matter, Plaintiff Madelyn Casilao and Harry Lincuna worked as housekeepers for Hotelmacher. They received offer letters issued by Hotelmacher. Their labor certifications for the H-2B program were submitted by Hotelmacher, and the POEA forms submitted were between Hotelmacher and the POEA. Therefore, Casilao and

5

Lincuna's contract claims, if any, under these three theories can only plausibly be alleged against Hotelmacher. None of the other Defendants were parties to any of those alleged contracts. Similarly, Plaintiff Allan Garcia worked as a food server for Steakmacher. He received an offer letter from Steakmacher. Labor certification forms and attestations were submitted by Steakmacher, and Steakmacher submitted forms to the POEA. Plaintiffs have failed to assert any factual allegations that could plausibly establish that any contract was formed between Allan Garcia and the other named Defendants.

And second, companies can only act through their agents/employees. Here, any promises allegedly made regarding a workers' employment, pay, benefits, and the like, were made by agents on behalf of Hotelmacher, Steakmacher, and/or Schumacher Investments. The fact that these Plaintiffs may have had interactions with Walt Schumacher, Carolyn Schumacher, or APEX (allegedly acting as a human resources department) during the course of their employment does not alone create personal liability against the Schumachers or joint liability against APEX. *See Bane v. Anderson, Bryant & Co.*, 1989 OK 140, 786 P.2d 1230, 1234, quoting *Moran v. Loeffler-Greene Supply Co.*, 1957 OK 149, 316 P.2d 132, 134 ("The general rule is that a contract made with a known agent for a disclosed principal is a contract with the principal alone."). Moreover Plaintiff has no plausible claim for joint liability for a breach of contract claim based solely on the fact that the entities are all allegedly owned by the same individuals.

Therefore, breach of contract claims against any Defendant for which there is no contract must be dismissed as a matter of law. Since none of the named Plaintiffs, nor any within the alleged putative class entered into contracts with APEX, Carolyn

Schumacher, or Walt Schumacher, all contract related claims against these Defendants should be dismissed as a matter of law.

### III. Plaintiffs' Class Claims Do Not Adequately Plead Numerosity or Predominance.

The United States Supreme Court has endorsed a critical examination of class claims at the pleading stage. *See Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160 (1982). As a result, numerous courts in this District and beyond have dismissed and/or stricken class claims at the pleading stage for failure to allege facts satisfying Rule 23's strenuous requirements. *See, e.g., Hockenbury v. Hanover Ins. Co.,* 2016 WL 552967, *3 (W.D. Okla. Feb. 10, 2016); *Williams v. CitiMortgage, Inc.,* 2014 WL 1406601, *2-3 (W.D. Okla. April 10, 2014); *Roberts v. Target Corp.,* 2012 WL 2357420, *3 (W.D. Okla. June 20, 2012); *Cox v. Allstate Ins. Co.,* 2009 WL 2591673, *3-4 (W.D. Okla. Aug. 19, 2009); *Baum v. Great Western Cities, Inc. of New Mexico,* 703 F.2d 1197, 1210 (10th Cir. 1983). Dismissal of class allegations at the pleading stage is, therefore, not as rare as Plaintiffs suggest. While Defendants stand on their previous arguments regarding Plaintiffs' failure to adequately plead numerosity, the more significant flaw lies with Plaintiffs' failure to adequately plead predominance, which is addressed below.[2]

---

[2] In that regard, numerous courts have dismissed class claims at the pleading stage when it was evident that individual issues would predominate over common issues. *Baum,* 703 F.2d 1197; *In re Yasmin and Yaz (Drospirenone) Marketing,* 275 F.R.D. 270, 276-77 (S.D.Ill. 2011) (striking class claims because individual issues, such as class members' medical history and questions of materiality and reliance, predominated over common issues); *Lumpkin v. E.I. Du Pont de Nemours & Co.,* 161 F.R.D. 480, 482 (M.D. Ga. 1995) (striking class claims in employment case because, while all plaintiffs were present employees, "their allegations are discrete and individualized. They are employed in

### a.     Plaintiffs' Class Claims Show, On Their Face, That Individual Issues Will Predominate.

Plaintiffs' class claims sound primarily in human trafficking and breach of contract.  With respect to human trafficking claims, some courts have found (as Plaintiffs acknowledge) that the question of whether an employer's allegedly coercive conduct was sufficient to make the alleged victim's labor involuntary "cannot be answered via generalized class-wide proof but rather must be answered individually based upon individualized proof."  *David v. Signal Intern., LLC,* 2012 WL 10759668, *21 (E.D. La. Jan. 4, 2012).  Courts have also found class certification particularly difficult, and therefore improper, in human trafficking cases where the alleged victims **did not sign the same employment contracts** and/or were not subject to the same working conditions. *See Panward v. Access Therapies, Inc.,* 2015 WL 329013, *6 (S.D. Ind. Jan. 22, 2015).

Similarly, individualized questions often predominate in breach of contract class actions.  The substantive variation of contract terms "rarely results in common questions predominating."  *Lawson v. Life of the South Ins. Co.,* 286 F.R.D. 689, 696 (M.D. Ga. 2012).  "[P]laintiffs [in a breach of contract class action] still must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims."  *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004).  Indeed, "claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the

---

different departments, supervised by different people, work different shifts and are at different levels within the company hierarchy.").

8

relevant terms vary in substance among the contracts." *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.,* 601 F.3d 1159, 1171 (11th Cir. 2010).

In other words, "[n]o one set of operative facts establishes liability." *Klay,* 382 F.3d at 1265. Even the existence of form contracts (such as Plaintiffs allege will exist here) "do[es] not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements," such as when a "defendant raises substantial affirmative defenses to breach." *Sacred Heart Health Systems, Inc.*, 601 F.3d at 1176-77.

The claims asserted here will require highly individualized factual inquiries unique to each prospective class member.[3] Plaintiffs were employed by different entities and performed different kinds of work, at varying levels of compensation. According to the Class Action Complaint,

- Plaintiff Casilao worked for Defendant Hotelmacher only, which did business as a Holiday Inn Express (hotel). *See Complaint* [Dkt. 1] at ¶ 11;

- Plaintiff Lincuna worked for Defendant Hotelmacher and Defendant Schumacher Investments, the latter of which did business as the Water Zoo. *Id.* at ¶ 12; and

- Plaintiff Garcia worked for Defendant Steakmacher LLC, which did business as Montana Mike's Steakhouse. *Id.* at ¶ 13.

While Plaintiffs generically contend that they and the rest of the putative class were treated "as a disposable and malleable pool of labor," Plaintiffs have not cited even one

---

[3] In *Menocal v. GEO Grp., Inc.,* 320 F.R.D. 258 (D. Colo. 2017), one of the principal cases relied upon by Plaintiffs, the defendant prison utilized a "specific, uniformly applicable" sanitation policy, and that policy was the factual predicate for plaintiffs' class claims. *Id.* at 264. No such uniform policy has been alleged here.

specific example where they themselves, or any member of the putative class, were uniformly employed by other entities as part of this alleged "pool of labor." *Id.* at ¶ 72. In fact, Plaintiffs Casilao and Garcia allege that they each were employed by **only one** of the Defendants. *Id.* at ¶¶ 11, 13. Only Plaintiff Lincuna alleges he was employed by more than one Defendant, but his allegation in that respect says nothing about that employment occurring because he was part of a "disposable and malleable pool of labor" or that it was the result of forced labor. *Id.* at ¶ 72.

Plaintiffs' allegations reveal on their face that they, and their putative class members, worked for different entities, were supervised by different people, worked different shifts and were compensated differently. That conclusion is not altered by the fact that Plaintiffs' alleged employment was allegedly fostered by standard forms submitted to various government entities. Individualized inquiries regarding the terms of each putative class members' employment, whether those terms were breached, the conditions each putative class member was exposed to, and how those conditions affected each individual class member will unquestionably predominate over any common question of fact or law. Plaintiffs' class claims fail to adequately plead predominance under Rule 23(b)(3) and should be dismissed and/or stricken.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motions be granted.

Respectfully submitted,

/s/     Kevin R. Donelson
Kevin R. Donelson, OBA #12647
C. Eric Shephard, OBA # 22299
Kim Tran, OBA # 21384
A. Wayne Billings, OBA #31483
FELLERS, SNIDER, BLANKENSHIP,
   BAILEY & TIPPENS, P.C.
100 North Broadway,  Suite 1700
Oklahoma City, OK 73102-9211
Telephone:    (405) 232-0621
Facsimile:    (405) 232-9659
Emails:        kdonelson@fellerssnider.com
               eshephard@fellerssnider.com
               ktran@fellerssnider.com
               wbillings@fellerssnider.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I filed the attached document with the Clerk of the Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

*/s/ Kevin R. Donelson*
*Attorney for Defendants*

718107/76901