UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

MADELYN CASILAO, HARRY LINCUNA, and ALLAN GARCIA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

HOTELMACHER LLC, dba HOLIDAY INN EXPRESS; STEAKMACHER, LLC, dba MONTANA MIKE'S STEAKHOUSE; SCHUMACHER INVESTMENTS, LLC, dba WATER ZOO; APEX USA, INC.; WALTER SCHUMACHER; and CAROLYN SCHUMACHER,

Defendants.

Case No.: 5:17-CV-00800-SLP

**PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF GREG H. BRISTOL AND MEMORANDUM IN SUPPORT OF THEIR MOTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................2

I. MR. BRISTOL SHOULD BE PRECLUDED FROM OPINING ON THE CLASS CERTIFICATION ISSUE ..........................................................................3

II. MR. BRISTOL SHOULD BE PRECLUDED FROM OFFERING UNRELIABLE OPINIONS ..........................................................................................8

1. MR. BRISTOL'S "RED FLAGS" ANALYSIS IS UNRELIABLE ...........9

2. MR. BRISTOL IGNORED "RED FLAGS" THAT SUPPORTED PLAINTIFFS' POSITION ..........................................................10

3. MR. BRISTOL DID NOT REVIEW SUFFICIENT EVIDENCE TO FORM AN INDEPENDENT OPINION BASED ON AN APPLICATION OF THE EVIDENCE TO HIS PURPORTED "RED FLAGS" ......................................................................11

4. MR. BRISTOL SHOULD BE PRECLUDED FROM OFFERING OPINIONS THAT ARE BASED ON HIS OWN ASSESSMENT OF WITNESS CREDIBILITY ..................................................14

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Anderson v. Boeing Co.,
222 F.R.D. 521 (N.D. Okla. 2004)....................2

Daubert v. Merrell Dow Pharmaceuticals,
509 U.S. 579 (1993)....................2, 3, 9

Dodge v. Cotter Corp.,
328 F.3d 1212 (10th Cir. 2003)....................9

Graves v. Mazda Motor Corp.,
675 F. Supp. 2d 1082 (W. D. Okla. 2009),
aff'd, 405 F. App'x 296 (10th Cir. 2010)....................7

Kuhmo Tire Co. v. Carmichael,
526 U.S. 137 (1999)....................14

Lippe v. Howard,
287 F. Supp. 3d 1271 (W.D. Okla. 2018)....................3, 9, 10, 12

Menocal v. GEO Group, Inc.,
882 F.3d 905 (10th Cir. 2018)....................5

Milne v. USA Cycling Inc.,
575 F.3d 1120 (10th Cir. 2009)....................3

Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,
No. LA CV10-01172 JAK, 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011)....................6

Ralston v. Smith & Nephew Richards, Inc.,
275 F.3d 965 (10th Cir. 2001)....................3

Rimbert v. Eli Lilly & Co.,
No. CIV 06-0874 JCH/LFG, 2009 WL 2208570 (D.N.M. July 21, 2009),
aff'd, 647 F.3d 1247 (10th Cir. 2011)....................11

In re Samsung Top-Load Washing Machine Marketing, Sales Practices & Products Liability Litigation,
No. 17-ML-2792-D (TDD), 2019 WL 6118267 (W.D. Okla. Nov. 18, 2019)....................2

United States v. Hill,
749 F.3d 1250 (10th Cir. 2014)....................14

United States v. Medina-Copete,
757 F.3d 1092 (10th Cir. 2014) ....................................................................................9

United States v. Nacchio,
555 F.3d 1234 (10th Cir. 2009) ....................................................................................3

**STATUTES**

18 U.S.C. § 1595.........................................................................................................................1

18 U.S.C. § 1595(a) .....................................................................................................................5

Pub. L. No. 110-457 § 221, 122 Stat. 5044 (2008)...........................................................................5

**RULES**

Fed. R. Evid. 702 ...........................................................................................................2, 3, 9

Fed. R. Evid. 702(b)......................................................................................................................11

## PRELIMINARY STATEMENT

Defendants' proffered expert, Greg H. Bristol, has neither experience investigating civil human trafficking claims nor familiarity with the legal standards applied to civil human trafficking claims brought on an individual or class basis. Instead, he purports to draw on his experience as a law enforcement officer and participation in criminal human trafficking investigations to opine on whether the evidence presented thus far is sufficient to support certification of a Rule 23 labor trafficking class. Compounding his lack of experience, Mr. Bristol reaches these conclusions through a flawed "method" of applying a limited subset of evidence, spoon-fed to him by Defendants' counsel, to a cherry-picked set of "red flags." Consequently, Mr. Bristol's report and testimony do nothing more than impermissibly propound opinions by his own *ipse dixit*. To the extent that Mr. Bristol attempts to offer opinions on whether the evidence in this case supports either individual or class-wide claims of human trafficking, the Court should strike Mr. Bristol's report for the following reasons:

First, Mr. Bristol's opinions stem solely from inapplicable experience. In fact, Mr. Bristol conceded at his deposition that he has no experience working on civil human trafficking cases, does not know the elements for a civil claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 et seq., (the "TVPRA"), and had to google the term "class certification." In light of Mr. Bristol's lack of relevant experience with civil human trafficking cases, the applicable law, and the standards for class certification, his proffered testimony will be unhelpful to the Court and is impermissible as a matter of law.

Second, Mr. Bristol's purported opinions rest on an unreliable foundation. In particular, Mr. Bristol bases his opinions on whether, in his view, the evidence matches certain "red flags" that he purportedly would have used as a law enforcement officer. Notwithstanding the fact an analysis rooted in criminal investigation could reveal little about whether the evidence in this case supports a civil claim under the TVPRA or whether Plaintiffs have satisfied the requirements of Rule 23, Mr. Bristol's application of this "method" was fatally flawed. Specifically, Mr. Bristol evaluated an incredibly limited set of documents provided to him by Defendants' counsel against a cherry-picked set of "red flags" and relied on his own credibility assessments of the parties. As such, Mr. Bristol's methodology is unreliable.

**ARGUMENT**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which codifies the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).[1] Under Rule 702, the district court must act as a

[1] "[A]t the class certification stage, the degree of scrutiny to which expert testimony should be subjected remains unsettled after Wal-Mart Stores, Inc., v. Dukes, where the Supreme Court pointedly suggested that a full 'Daubert-style evaluation is required.'" In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig., No. 17-ML-2792-D (TDD), 2019 WL 6118267, at *2 (W.D. Okla. Nov. 18, 2019) (citations omitted) (collecting cases). Although the Tenth Circuit has yet to clarify the standard courts should apply at the class certification stage, the court does not have to reach that issue to render a decision on the present motion because Mr. Bristol's qualifications and methods "are so fatally flawed as to be inadmissible as a matter of law." Anderson v. Boeing Co., 222 F.R.D. 521, 527 (N.D. Okla. 2004) (citation omitted) (applying the standard of whether expert testimony was inadmissible as a matter of law at class certification stage where "discovery on the merits ha[d] yet to be conducted").

"gatekeep[er]" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. In making that determination, "the district court performs a two-step analysis. First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion. . . . Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable." Milne v. USA Cycling Inc., 575 F.3d 1120 (10th Cir. 2009) (citations omitted). The party introducing the expert testimony bears the burden of proving its admissibility. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). Defendants cannot meet that burden.

## I. MR. BRISTOL SHOULD BE PRECLUDED FROM OPINING ON THE CLASS CERTIFICATION ISSUE

Mr. Bristol lacks the relevant experience and expertise to assist the Court in determining the class certification issue presented in this case. The Tenth Circuit has utilized a "focused approach to determining an expert's qualifications," namely testing whether "[t]he expert's qualifications . . . [are] both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education,' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert." Lippe v. Howard, 287 F. Supp. 3d 1271, 1279 (W.D. Okla. 2018) (emphasis added) (citation omitted); see also, e.g., Milne, 575 F.3d at 1133 (holding that expert in paved road bike races was not qualified to opine on mountain bike races, which follow "different . . . rules and practices"); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir.

2001) (holding that orthopedic surgeon was not qualified to opine on orthopedic device she had not used or studied).

The specific question posed at the class certification stage—namely, whether Plaintiffs have satisfied Rule 23's requirements of numerosity, commonality, adequacy, and preponderance, such that they may assert civil trafficking claims on behalf of a class of individuals—requires an understanding of the legal standards and procedural rules for class certification and for the particular claims at issue. Mr. Bristol has demonstrated a complete lack of experience in civil TVPRA litigation and, more specifically, class certification.

Mr. Bristol's inexperience is compounded by his own admissions that, in his entire career, he has never worked on a civil human trafficking case and does not know the standard required to prove a civil violation of the TVPRA.[2] Nevertheless, Mr.

---

[2] Mr. Bristol testified in his deposition that, to the extent he worked on human trafficking matters during his tenure as a law enforcement officer, he never worked on civil investigations. (See, e.g., Ex. 2 at 16:9-12 ("[Counsel:] And when you were at the FBI . . . you were primarily involved in criminal investigations? [Mr. Bristol:] Yes, always criminal investigations."); id. at 17:9-11("[Counsel:] And [the interviews you conducted as an agent for the Civil Rights Squad] were all for criminal matters, criminal investigations? [Mr. Bristol:] All criminal investigations, correct."). Likewise, Mr. Bristol testified that he has never conducted any trainings regarding civil investigations on human trafficking. See id. at 30:14-16 ("[Counsel:] Ha[s the Department of Justice] ever asked you to consult on the civil remedy portions of the TVPA? [Mr. Bristol:] No, never.").) He also testified that he did not know the elements for the civil remedies under the TVPRA and did not consider them when conducting his analysis. See id. at 142:2-142:14 ("[Counsel:] Do you know what the elements are for the claim for the civil remedy claim? [Mr. Bristol:] No, I'd have to look it up. [Counsel:] So in your report, when you opine on that you don't think that that evidence supports the determination of human trafficking, you're not referring to the elements of the civil remedy claim? [Mr. Bristol:] No. . . .").

Bristol opines in his report that "the current allegations and evidence in this case do not support a determination of class-wide . . . human trafficking," (Ex. 1 ¶ 14; see also id. ¶ 19), and opined at his deposition on what evidence is appropriate for the Court to consider in making that determination, (e.g., Ex. 2 at 107:13-112:16). Mr. Bristol's lack of expertise in these matters is evident throughout his report and testimony.

First, Mr. Bristol opined in his report that "[t]he individualized nature of the alleged human trafficking . . . is not subject to a determination on a class or group-wide basis in this case." (Ex. 1 ¶ 19.) At his deposition, he clarified that, in his opinion, it is "impossible" to have a "broad stroke human trafficking claim," because trafficking cases are "so unique and the circumstances, especially with employment," vary from individual to individual. (Ex. 2 at 43:20-24, 44:2-9.) An opinion that a civil trafficking class action cannot exist would be at odds with the established law of this Circuit. See Menocal v. GEO Grp., Inc., 882 F.3d 905, 923 (10th Cir. 2018). Thankfully, Mr. Bristol did not offer such an opinion: he testified at his deposition that he was "only . . . talking about the criminal aspect." (Ex. 2 at 44:19-20.) When he was asked whether he thought that he could "opine on whether . . . a broad-based civil action is possible," Mr. Bristol admitted that he is "not trained in the civil aspect." (Ex. 2 at 44:21-45:3 (emphasis added).)

Although most of the elements of a civil and criminal violation are the same, 18 U.S.C. § 1595(a), the 2008 reauthorization of the Act extended the civil remedy provision to allow recovery against "whoever knowingly benefits, financially or by receiving anything of value," from a substantive violation, Pub. L. No. 110-457 § 221, 122 Stat. 5044 (2008). More important, however, are the procedural and practical

differences between criminal and civil enforcement, which present a myriad of reasons why a defendant found civilly liable may have avoided criminal prosecution: the high standard of proof in criminal proceedings, the lack of resources, prosecutorial discretion, political priorities, and more. (See Ex. 3 ¶¶ 9-10.) Mr. Bristol himself made this distinction clear when he explained why he would not consider allegations about the actions of recruiters outside the United States when evaluating a trafficking claim:[3]

> I want to know what happens in the United States, in Ohio or Michigan, and did [the victim] think they were getting a job at a car dealership and they end up on a chicken farm with a guard and a barbed wire fence and German Shepherds. That's what I need to know. That's how I'm going to build a case of human trafficking, because I've already got prosecutors telling me: "Where is the German Shepherd and barbed wire fences?" That's what they want.

(Ex. 2 at 156:3-13; see also, e.g., id. at 142:25-143:3 ("[Mr. Bristol:] [T]here's also human trafficking, but since it's not severe, the prosecutors won't prosecute it."); id. at 173:12-17 ("[Counsel:] So you don't think recruitment promises made that are untrue could be relevant to human trafficking? [Mr. Bristol:] I think it's relevant but it's at the very low perspective of the elements that are going to convince a prosecutor to prosecute.").)

---

[3] Mr. Bristol later testified that he did not think it was necessary to review documents that were not in the English language or that were prepared in a foreign country "because what decisions they made in another country is not a violation of U.S. law." (Ex. 2 at 172:9-10.) However, such evidence is clearly relevant to a civil TVPRA claim where the alleged scheme includes promises made by foreign recruiters to induce class members to travel to the United States. See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd., No. LA CV10-01172 JAK, 2011 WL 7095434, at *1 (C.D. Cal. Dec. 12, 2011) (certifying a TVPRA class where the alleged scheme included promises made by Filipino recruiters to class members while in the Philippines).

While Mr. Bristol may be well versed in the aspects of an investigation that would convince a criminal prosecutor to devote resources to an investigation, such expertise does not qualify him to opine on whether a civil TVPRA case can be decided on a class-wide basis. "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Graves v. Mazda Motor Corp., 675 F. Supp. 2d 1082, 1092-93 (W. D. Okla. 2009) (citation omitted), aff'd, 405 F. App'x 296 (10th Cir. 2010). Mr. Bristol's report and testimony demonstrate that while he may be qualified to answer the question, "Would a prosecutor bring criminal trafficking charges against Defendants based on the evidence presented?", he lacks the knowledge and the experience required to opine on the questions presented at the class certification stage in a civil TVPRA action. Consequently, by Mr. Bristol's own admissions, he cannot adequately offer an opinion on the issues presented here.

Second, as Mr. Bristol admitted, he has no legal training (see Ex. 2 at 12:5-8, and possesses little, if any, understanding of the requirements for class certification beyond what he learned through internet searches and speaking with Defendants' counsel, (see, e.g., id. at 103:9-104:20 ("[Mr. Bristol:] I looked up what class certification stage was and I looked up [on the Internet] what the merit stage was and then I asked questions to [Defendants' counsel] . . . and they explained to me what class certification was.").) Nevertheless, he repeatedly opined on what evidence would be appropriate for

the Court to consider in determining whether to grant class certification.[4] Because of the different standards of proof in civil litigation and, at times, the different evidentiary rules, Mr. Bristol's lack of legal training and civil litigation experience render his opinions on what evidence to consider plainly unhelpful to the Court.

## II. MR. BRISTOL SHOULD BE PRECLUDED FROM OFFERING UNRELIABLE OPINIONS

Even if Mr. Bristol were qualified to offer opinions in this case (which he is not), Mr. Bristol's proffered opinions would nevertheless be inadmissible because they are unreliable. As an initial matter, Mr. Bristol's sole purported method—namely, the comparison of the evidence he reviewed to a list of "red flags" that he would use as a law enforcement officer determining whether to open a criminal investigation—reveals nothing about whether evidence in this case supports the Plaintiffs' civil TVPRA claims, let alone whether Plaintiffs have satisfied the requirements of Rule 23. Any conclusions reached through this "method" are unreliable for three independent reasons: (i) Mr. Bristol only used the "red flags" that supported Defendants' position, while he ignored those that undermined it; (ii) in determining that particularly "red flags" were not present in this case, Mr. Bristol compared only a few, pre-selected documents provided to him by

---

[4] (See, e.g., Ex. 2 at 107:13-108:24 (stating recruiting fees should not be considered in class certification analysis if paid for by family members); id. at 111:18-112:2 (stating that "certifi[cation] as victims of human trafficking" constitutes factor to consider in class certification determination); id. at 112:5-16 (stating that decision by Department of Health and Human Services or "the judge" that human trafficking occurred would be sufficient evidence to support a determination of class certification); id. at 123:22-124:14 (testifying that he does not know what factors the Department of Health and Human Services looks at when determining that someone is a trafficking victim).)

Defendants' counsel to his list of purported "red flags"; and (iii) Mr. Bristol applied his own assessment of the credibility of the witnesses based on those documents. See Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) ("[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.").

**1. Mr. Bristol's "Red Flags" Analysis Is Unreliable**

Mr. Bristol used a standard of his own invention in his analysis of Plaintiffs' claims. Rule 702 requires that "reasoning or methodology underlying [an expert's] testimony" be "valid." Daubert, 509 U.S. at 592-93. An expert's reasoning may be based on his experience in a particular field. Lippe, 287 F. Supp. 3d at 1281 (citing United States v. Medina-Copete, 757 F.3d 1092, 1104 (10th Cir. 2014)). "However, witnesses 'relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Id. (alteration in original). Mr. Bristol claims that, in determining whether the "evidence in this case . . . support[s] a determination of class-wide or other human trafficking," he applied various "red flags" of human trafficking that he learned through "investigat[ing] about 60 human trafficking cases while with the FBI." (Ex. 1 ¶¶ 14, 24.)

Plaintiffs concede that Mr. Bristol's experience would likely be a sufficient basis for his opinions as to whether the Defendants' conduct was "severe" enough for "a prosecutor [to] decide to prosecute" them. (Ex. 2 at 142:21-143:8.) However, as discussed supra Part I, Mr. Bristol was asked a different question. And he did nothing to demonstrate that his law enforcement experience is a sufficient basis for his opinions as

to the propriety of class certification: when asked if the standard required for a prosecutor to decide to prosecute is the same as the standard to succeed in a civil trial, Mr. Bristol responded, "I don't know." (Id. at 143:9-14.) More striking, when asked whether "in your report, when you opine on that you don't think that th[e] evidence supports the determination of human trafficking, you're not referring to the elements of the civil remedy claim," Mr. Bristol responded, "No." (Id. at 142:2-10.)

Mr. Bristol has not explained how his experience leads to the conclusion reached, why his experience is a sufficient basis for his opinions, or how his experience is reliably applied to the claims in this case. As a result, Mr. Bristol's purported "red flags" method cannot help the Court determine whether the evidence supports Plaintiffs' claims, let alone whether the evidence supports a class-wide determination. See Lippe, 287 F. Supp. 3d at 1281.

### 2. Mr. Bristol Ignored "Red Flags" That Supported Plaintiffs' Position

Even if Mr. Bristol's "red flags" method did bear on the determination of class certification in a civil TVPRA action (which it does not), Mr. Bristol's conclusion—that the evidence does not raise enough "red flags" to indicate that Plaintiffs and class members were victims of trafficking—is unreliable: Mr. Bristol selectively ignored those "red flags" that are consistent with Plaintiffs' position and that are relevant to the case. For example, although Mr. Bristol cites a document from the National Human Trafficking Hotline's website as a source from which he derived "additional red flags," he admitted at his deposition that he did not include the factors listed in that document

that are most applicable to the present case. These "red flags" include the fact that a victim was "[r]ecruited through false promises concerning the nature or conditions of his or her work" and "[o]wes a large debt and is unable to pay it off."[5] (Ex. 2 at 119:13-123:21.) Despite omitting these from his report, Mr. Bristol acknowledged that all of them constituted "red flags" that he would tell somebody to consider when determining whether to report potential human trafficking to law enforcement. (Id. at 123:10-21.) Mr. Bristol's cherry-picked "red flags" were clearly the result of a backward application of his method, and such a method cannot generate reliable conclusions. Rimbert v. Eli Lilly & Co., No. CIV 06-0874 JCH/LFG, 2009 WL 2208570, at *20 (D.N.M. July 21, 2009) ("A methodology that inexplicably ignores material facts and relies only on selective evidence does not lead to a reliable opinion."), aff'd, 647 F.3d 1247 (10th Cir. 2011).

**3. Mr. Bristol Did Not Review Sufficient Evidence To Form An Independent Opinion Based On An Application Of The Evidence To His Purported "Red Flags"**

Regardless of the method applied, an expert seeking to establish the reliability of his methods must base them on "sufficient facts or data." Fed. R. Evid. 702(b). Although an expert need not consider every possible fact, he must base his opinions on enough facts to "enable him to 'express a reasonably accurate conclusion as

[5] When asked why he did not include the "red flags" that a victim "is unpaid, paid very little or paid only through tips," "[o]wes a large debt and is unable to pay it off," and "[r]ecruited through false promises concerning the nature or conditions of his or her work," Mr. Bristol responded that he was trying to keep his list to "one page." (Ex. 2 at 120:3-11; 123:6-9.)

*(cont'd)*

opposed to conjecture or speculation.'" Lippe, 287 F. Supp. 3d at 1283 (citation omitted). Mr. Bristol plainly failed to consider enough documents to determine whether a sufficient number of "red flags" were raised by the evidence. Although the parties have produced approximately 31,000 pages of documents in this and the Francis[6] actions, Mr. Bristol identified at most fifteen documents,[7] pre-selected by Defendants' counsel, that he reviewed in formulating his opinion. He estimated that he had seen only ten percent of the documents that Plaintiffs' counsel marked as exhibits for his deposition (Ex. 2 at 94:16-20), and admitted that, in his role as a law enforcement officer applying his own "red flag" methodology, he would have undertaken a much more extensive investigation into the evidence (id. at 62:15-63:17).[8] Given the limited subset of materials Mr. Bristol reviewed, his opinion that there was “no evidence” of the “red flags” he identified is of limited value.

---

6 Francis et al. v. APEX U.S.A. et al., 5:18-cv-00583-SLP (W.D. Okla. 2018).

7 Specifically, Mr. Bristol listed the following as the materials from the record that he reviewed: the Complaint, the expert report prepared by Luis C. deBaca, one statement from an absent class member, two deposition transcripts, and unidentified materials from the human resource files of the Named Plaintiffs. (Ex. 1, Appx. B.)

8 When asked "were there types of documents you didn't receive that you think would have been helpful to prepare your opinion?" Mr. Bristol responded "[w]ell, I would have liked to have seen all the employee payroll files of -- or all the depositions that were being done, but there -- I was receiving them as they came in." (Ex. 2 at 40:23-41:5.) Mr. Bristol also identified the employment contract or job offer, pay stabs, and any evidence in the personnel file of awards or discipline as important documents to review in making a determination about human trafficking. (Id. at 41:20-42:3.) But rather than review such documents—documents produced by Defendants in discovery—Mr. Bristol reviewed two depositions and six draft affidavits. (Ex. 2 ¶ 39.)

Indeed, documents produced in discovery that Mr. Bristol did not review suggest that many of the "red flags" he claimed were not present in this case in fact did occur. For example, Mr. Bristol claimed that the class members were not charged excessive fees. (Ex. 1 at 12.) To the contrary, H-2B workers paid fees totaling between approximately $2,000 and $3,000 USD. (See, e.g., Ex. 4; Ex. 5 at 67:16-68:9 ("[Counsel:] How much money in addition to the $550 did you pay to April Tan? [Mr. Garcia:] 1,200. [Counsel:] Is that pesos or dollars? [Mr. Garcia:] Dollars. [Counsel:] 1,200 -- you paid $1,200 to April Tan in addition to the $550 you paid her for POLO? [Mr. Garcia:] That is their processing for the agency.")) Notably, Mr. Bristol noted in his report that a $1,200 processing fee constituted a "red flag" in United States v. Farrell. (Ex. 1 at 10.)

Despite these admissions in the documents Mr. Bristol actually did review, Mr. Bristol testified that he never requested additional documents (Ex. 2 at 40:2-10) and did not advise Defendants' counsel what categories of documents he needed to render his opinion (id. at 40:18-22 ("[Counsel:] So you never gave them categories of documents that you would need to provide -- to provide your opinion? [Mr. Bristol:] No. I never gave them a request or list for that.").) In an attempt to explain why he failed to ask for additional information that he admittedly needed to apply his own methodology, Mr. Bristol insisted that he "was not hired to [collect evidence] and [] didn't ask to do [it]." (Id. at 42:6-10). In fact, Mr. Bristol testified that he had predetermined that Plaintiffs had not been subjected to a human trafficking scheme after only reading the Complaint. (Id. at 151:4-7, 156:17-21.) This admission is plainly at odds with the "intellectual rigor"

required of experts in federal court. See Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) (noting that the overarching goal of Daubert's gatekeeping requirement "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

**4. Mr. Bristol Should Be Precluded From Offering Opinions That Are Based On His Own Assessment Of Witness Credibility**

Because the credibility of witnesses rests within the exclusive province of the factfinder, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony. . . [as it] (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) . . . is prejudicial and unduly influences the jury." United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014) (citations omitted) (internal quotation marks omitted). As such, the Court should exclude Mr. Bristol's opinions to the extent that they rest on his assessment of the credibility of the parties.

For example, Mr. Bristol's report states that threats of deportation and excessive fees, two "red flags," were either "[n]ot reported in this case" or "unsubstantiated rumors." (Ex. 1 ¶¶ 36, 38(E).) Mr. Bristol plainly ignored the testimony of Allan Garcia, who stated that he paid the recruiter in the Philippines an additional $1,200 as an agency fee. (Ex. 5 at 67:16-23.) Clearly, Mr. Bristol chose to discredit Mr. Garcia's testimony. Moreover, when asked in his deposition why he stated in his report that "other than unsubstantiated rumors, there are no indications that the defendant threatened to deport the named plaintiffs or other proposed class members,"

Mr. Bristol replied, in part, that he was "looking at rumors versus . . . evidence like in the Farrell case, [where the victim] picked up the phone and called -- called immigration." (Ex. 2. at 188:13-24.) As an initial matter, having read Harry Lincuna's deposition testimony, Mr. Bristol knew that Mr. Lincuna and another H-2B employee did contact the State Department and a human trafficking hotline. (Ex. 6 at 134:4-9.) Mr. Bristol plainly and impermissibly discredited this testimony. Mr. Bristol also discredited—or was not given the chance to consider—other evidence that Defendants threatened class members with deportation and searched for them after they had escaped Defendants' employment.[9] Conversely, Mr. Bristol credited Mr. Schumacher's testimony to such an extent that he determined it was not necessary to review documents that would confirm the accuracy of his testimony. (Ex. 2 at 146:6-148:9.) The Court should exclude Mr. Bristol's opinions to the extent that they rest on his assessment of the credibility of the parties.

**CONCLUSION**

For all of the foregoing reasons, the Court should strike the report and testimony of Mr. Bristol in its entirety.

---

9 (See, e.g., threats of deportation (Ex. 7; Ex. 8); searching for class members once they left or escaped Defendants' employ (Ex. 9; Ex. 10; Ex. 11).)

Dated: October 12, 2020

Respectfully Submitted,

*/s/ Catherine Fisher*
Meghan Lambert (OBA #33216)
ACLU OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Facsimile: (405) 524-2296
Email: mlambert@acluok.org

George Warner, *Pro Hac Vice*
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
Emails: gwarner@legalaidatwork.org

Eben Colby, *Pro Hac Vice*
Catherine Fisher, *Pro Hac Vice*
500 Boylston Street, 23rd Floor
Boston, MA 02116
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
Emails: Eben.Colby@probonolaw.com
Catherine.Fisher@probonolaw.com

Christopher J. Willett, *Pro Hac Vice*
Caitlin Boehne, *Pro Hac Vice*
Rebecca Eisenbrey, *Pro Hac Vice*
EQUAL JUSTICE CENTER
510 Congress Ave., Ste. 206
Austin, Texas 78704
Telephone: (512) 474-0007
Facsimile: (512) 474-0008
Emails: cwillett@equaljusticecenter.org
cboehne@equaljusticecenter.org
reisenbrey@equaljusticecenter.org

***Attorneys for Plaintiffs***