# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

Rebuttal Expert Report

of

Ambassador (ret.) Luis C.deBaca

in the matters of

Casilao, et al, v. Hotelmacher LLC, et al, Case No. CIV-17-800-M

and

Francis v. Apex, USA et al, Case No: CIV-18-583-HE

August 11, 2020

1.	My name is Luis C.deBaca.  As set forth in my submission of June 16, 2020 (C.deBaca Expert Report), Plaintiffs have retained me as an expert in forced labor/involuntary servitude/human trafficking in American and international practice, for the purpose of assisting the Court in its determination of class action status in the above-captioned matters.

2.	Information about my qualifications and compensation are contained in and attached as exhibits to C.deBaca Expert Report and are incorporated herein by reference.  An updated list of the materials I have reviewed in this matter is attached as Exhibit 1.  I reserve the right to supplement or amend my opinions in light of any further allegations, depositions, expert reports, etc. that may occur subsequent to this report.

3.	I have been asked to provide a rebuttal expert report responding to Greg Bristol's reports of July 24, 2020, and to opine on Mr. Bristol's opinion about the proper analysis that should be used in a human trafficking investigation.

4.	This rebuttal report is based on information and experiences set forth in the C.deBaca Expert Report.  I specifically draw on my extensive experience in investigating and prosecuting trafficking cases, coordinating national human trafficking investigations and trainings, negotiating legislative and regulatory language and leading its implementation across the federal government and in countries around the world.  My experience spans the development of modern legislation and practice, but also involves the Federal Bureau of Investigation's anti-trafficking activities that underly Mr. Bristol's experiences and qualifications (Bristol Casilao Report paras. 9-11, Bristol Francis Report paras. 9-11).  When opening a preliminary investigation, the FBI immediately cross-notifies the Civil Rights Division and agents and prosecutors work in tandem throughout the pendency of the investigation and any prosecution.  I not only worked closely with field agents in investigating particular cases, but

also worked closely with the Civil Rights Unit at FBI Headquarters (CRU) in implementing the Trafficking Victims Protection Act (TVPA)[1] after its passage, including: the development of training materials and internal guidance; training in FBI field offices, U.S. Attorney's Offices, national counter-trafficking conferences, and at the Justice Department's National Advocacy Center; teaching at the FBI Academy and the FBI National Academy (a residential program for state, local, and international law enforcement); and developing materials with the CRU in tandem with the service provider community.

5. In preparing this report I have reviewed and considered the contents and conclusions of the Expert Reports of Greg H. Bristol, dated July 24, 2020, and the attachments thereto, including his proffered opinions and basis for expertise. I have also reviewed and considered documents referenced in the footnotes herein.

6. It is my conclusion that A) Mr. Bristol's opinions are not relevant to the instant question in this case (whether class certification is proper); B) Mr. Bristol's opinions based on his experience as a criminal investigator and law enforcement trainer are limited in applicability to a civil action; and C) Mr. Bristol's characterization of "red flags", "indicators", and other cases lends a false impression that cases under the TVPA are limited to certain fact patterns, as opposed to Congress having created a dynamic and flexible standard.

**A) <u>The Instant Question Is Class Certification</u>**

7. In reviewing Mr. Bristol's expert report, it appears focused on the ultimate issue (whether the defendants are liable for Chapter 77 offenses) as opposed to the issue before the

---

[1] Trafficking Victims Protection Act, P.L. 106-386 (October 28, 2000).

Court – the propriety of class certification in these matters. That is a different inquiry than the commonality, typicality, predominance, and superiority determinations facing the Court. Mr. Bristol's extensive conclusions (Bristol Casilao Report paras. 49-59, Bristol Francis Report paras. 54-67) do not address (other than cursorily) the issue of class certification but speak directly to the ultimate issue in this case: in his opinion, this is not a trafficking case. Mr. Bristol opines that the Schumachers are not "human trafficker employer[s]." (Bristol Francis Report paras. 40-45.) This is not a legal standard, and appears to have been based on a set of affidavits – some not even signed – from several former Schumacher workers (a very small percentage of the proposed J-1 class) uniformly expressing happy memories of the work and describing the Schumachers in glowing terms.[2] Such an approach puts the cart before the horse, as the class determination is to be considered independently of the merits of the case, as opposed to undertaking a "free-ranging" inquiry into the merits of the claim. *Amgen, Inc. v. CT Retirement Plans and Trust Funds,* 568 U.S. 455, 466 (2013).

    **B)  Opinions Rooted In Law Enforcement Training Are Of Limited Applicability In Civil Actions**

    8.    Mr. Bristol's experience in conducting trainings for FBI agents and other law enforcement personnel is of limited use in determining the extent to which class certification would effectuate the goals of Rule 23, and of limited use in a civil context. Mr. Bristol's expertise, in addition to his investigative experience, is as "a subject matter expert in training law enforcement officers in identifying what is and is not human trafficking," (Bristol Casilao

---

[2] It is unclear whether Mr. Bristol interviewed these former employees, or someone else did and Mr. Bristol was thereafter given executed and draft affidavits to review.

Reportpara. 28, Bristol Francis Report para. 28), an enterprise that he started after his retirement from the FBI.

> **1) Civil Actions Carry Different Burdens of Proof Than Criminal Cases and Fulfill a Different Purpose Than Criminal Cases**

9. Criminal and civil matters are different, with different burdens of proof as well as additional considerations in the federal system such as case prioritization, federal interests, and the need for prosecutors to conclude that the evidence is sufficient to obtain a conviction at trial – that is, to prove the case beyond a reasonable doubt.[3] This is a far greater threshold than whether or not a private plaintiff can bring a civil lawsuit under the Chapter 77 statutes, or even the eventual burden of proof that they will bear before the trier of fact.

10. The limitation in using the last decade's criminal justice training activities to assess civil trafficking claims becomes even more stark when one considers the outcome of those training methods and standards: in the last decade, criminal cases have overwhelmingly devolved to sex trafficking situations (95 percent of all federal criminal prosecutions)[4] as opposed to labor cases. Recent reports indicate that prosecutors:

> "were cautious about labor trafficking claims. . . . Another federal prosecutor explained that although the broad legal definitions meant prosecutors could be creative in how they applied the new laws, terms like 'coercion' made cases of exploitation or extreme labor violations difficult to pursue in criminal court … a prosecutor in another jurisdiction confirmed a general reluctance to have agents investigate labor trafficking cases when there was not proof of severe violence. "I know that sounds terrible but in the area of forced labor you kind of have to get a little bit more egregious""[5]

---

[3] Principles of Federal Prosecution, U.S. Attorneys' Manual 9-27.220,
[4] Human Trafficking Inst., 2018 FEDERAL HUMAN TRAFFICKING REPORT 7 (2019), available online at https://www.traffickingmatters.com/wp-content/uploads/2019/04/2018-F ederal-Human-Trafficking-Report-Low-Res.pdf
[5] Amy Farrell et al., "Policing Labor Trafficking in the United States," 23 TRENDS IN ORGANIZED CRIME 36, at 42-43 (2019).

Based on my discussions with the field and participation in a Department of Justice effort to train local law enforcement on labor trafficking, the prosecutive reticence noted by Amy Farrell and her colleagues has had a downstream effect not just on investigative practices of police and federal agents, but also on service providers and victims' attorneys, who feel that only the most egregious cases will be accepted for prosecution. Since federal criminal practitioners have been very cautious in applying the TVPA in labor trafficking scenarios, victims and their attorneys have picked up the slack by pursuing civil remedies themselves: labor trafficking situations make up 95% of all civil human trafficking actions.[6] Federal training standards, law enforcement indicators, and investigative or prosecutive thresholds -- whether official policy or common practice -- are no substitute for plaintiffs' civil claims and the application of the elements of the offense by a trier of fact.

**2) The TVPA civil cause of action was created to allow victims to bring suit on their own, rather than being dependent on law enforcement**

11.     The TVPA originally modified the post-civil war slavery statutes, and was initially only a criminal enforcement tool. I coordinated that criminal enforcement. As set forth in my initial expert opinion, the TVPA filled critical gaps in federal criminal involuntary servitude law, creating new statutes whose elements focused on psychological and structural issues as much as the overt force/threats/confinement required by the traditional laws. Although the new laws – and the increased enforcement activity and multiagency collaboration that began in the late 1990s – saw an uptick in cases, it was clear that federal criminal enforcement would

---

[6] Human Trafficking Legal Ctr., *Federal Human Trafficking Civil Litigation: Fifteen Years of the Private Right of Action* 11 (2018), available online at https://www.htlegalcenter.org/Wp-Content/Uploads/Federal-Human-Trafficking-Civil-Litigation-1.Pdf

not be sufficient to reach the many ways in which people are held in compelled service. Accordingly, in 2003, Congress amended the TVPA to include a private right of action.[7]

12. Other Civil Rights violations have available both civil and criminal avenues (for instance, 18 U.S.C. 242 and 42 U.S.C. 1982 for official misconduct). In enacting the civil cause of action, Congress gave aggrieved workers the power to seek a remedy without depending on the government making determinations under a criminal standard. There are myriad reasons why someone might want to bring suit on their own rather than depend on the criminal justice system – most notably that it then becomes *their* decision whether to proceed with a case, rather than be bound by decisions of law enforcement or prosecutors to charge, decline, or dispose of cases without using the Chapter 77 statutes.

13. Mr. Bristol's experience in the Washington, D.C. Human Trafficking Task Force is itself testament to this point, demonstrating the flexibility of the TVPA provisions, the non-dispositiveness of law enforcement decision-making, and the different standards and justice goals between criminal and civil enforcement. In my experience, Mr. Bristol is best known for his determined investigation of *United States v. Bakilana*, Case No. 1:10-cr-00093-LMB (E.D. Va. 2010). In *Bakilana*, the defendant, who had brought in an African domestic servant under the G-5 visa category, was not convicted of a human trafficking offense but pled guilty to a violation of 18 U.S.C. 1001, for lying to Agent Bristol and federal prosecutors during the investigation. A federal spokesman, responding to advocates' concerns about the outcome, told the press that "the case was investigated jointly by the U.S. Attorney's Office and a Department

---

[7] Trafficking Victims Protection Reauthorization Act of 2003, P.L. 108-193 (2003).

of Justice unit designed to only prosecute human trafficking cases. They both determined the [trafficking] statute did not apply in this case, he said."[8]

14. That prosecutive determination by the Eastern District and the Civil Rights Division was not dispositive as to whether Sofia Kiwanuka was a trafficking victim, or whether she could herself seek civil remedies under the trafficking statutes. Indeed, Ms. Kiwanuka did bring a subsequent civil case, which was eventually settled. In denying Bakilana's motion to dismiss, the district court noted that she had not been a party to the criminal proceeding and was not bound by the prosecutors' decision to resolve the case through a particular guilty plea. *Kiwanuka v. Bakilana*, 2012 WL 593065 (D.D.C.), 18 Wage & Hour Cas.2d (BNA) 1506 (2012). The Kiwanuka court noted that Sections 1589 and 1590 were enacted:

> …to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers ... restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence," and to "combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*.

*Kiwanuka*, supra at 4, citing H.R.Rep. No. 106–939, at 101(2000) (Conf.Rep.).

**3) "Indicators" and "Red Flags" used in trainings are investigative and awareness-raising tools, rather than legal standards**

15. In reviewing Mr. Bristol's reports, "red flags" and "indicators" (which I will hereinafter refer to interchangeably) are a recurring theme, apparently suggesting that cases that don't track the law enforcement indicators that he typically teaches are not human trafficking cases at all. This elides the role of indicators, which are important initial investigatory tools, but

---

[8] Freeman Klopott, "World Bank economist gets day in jail for lying to FBI," *Washington Examiner* (July 04, 2010), available online at https://www.washingtonexaminer.com/world-bank-economist-gets-day-in-jail-for-lying-to-fbi

only to the extent that they make a law enforcement officer or supervisor pause before moving on to other calls or potential cases. Indicators have no legally-assigned burden of proof or legal effect. It is the elements of an offense that control whether there is sufficient cause to proceed in an investigation. Grand Juries in criminal cases don't indict on indicators, but on the elements of the offense. Trial Juries, whether in criminal or civil cases, are not instructed on indicators, but on the elements of the offense.

16. Indicators can help steer investigators and prosecutors in the earliest stages away from declining or mischaracterizing a case, and can assist their decision to investigate further. The indicators that are taught to law enforcement are starkly drawn to get them to recognize cases as opposed to defaulting to other more common crimes that they will immediately gravitate toward, such as alien smuggling or prostitution offenses.

17. Indicators are also not the binary ("what human trafficking is and is not") analysis that Mr. Bristol suggests in his reports. They are not a check-box that must be completed. Indeed, rather than listing indicators as exclusionary, the National Human Trafficking Hotline's discussion of indicators (Bristol Casilao Report para. 25, Bristol Francis Report para. 25) makes a point to twice caution the reader in their use of the indicators:

> Bear in mind that not all indicators will be present in all situations. The type of trafficking and the content or environment are all important to take into account.
>
> [and]
>
> This list is not exhaustive and represents only a selection of possible indicators. The red flags in this list may not be present in all trafficking cases. Each individual indicator should be taken in context, not be considered in isolation, nor should be taken as "proof" that human trafficking is occurring. Additionally, cultural differences should also be considered.[9]

---

[9] https://humantraffickinghotline.org/human-trafficking/recognizing-signs

18. Moreover, the National Hotline characterizes indicators not as a way to make the ultimate factual and legal findings in a case (criminal or civil), but proffers them because "[r]ecognizing potential red flags and knowing the indicators of human trafficking is a key step in identifying more victims and helping them find the assistance they need."  Indicators, therefore, are properly a threshold inquiry, not tied to legal determinations or rulings in litigation. For those, the facts of the case and the applicable statutory and caselaw govern.

19. Nevertheless, on the basis of his criminal experience, Mr. Bristol claims 26 red flags must be examined before <u>even alleging</u> "human trafficking has occurred" (Bristol Casilao Report para. 56, Bristol Francis Report para. 64) and lists 18 indications that he asserts are not present in this case that are present in other cases. (Bristol Casilao Report para. 38, Bristol Francis Report para. 38).  This is a mis-use of indicators.  Those indicators are things that may be relevant, may occur in a number of cases, should give patrol officers or field agents pause before moving on, and/or may add jury appeal.  But they are not elements of the offense.

20. The elements of the Forced Labor offense are that someone knowingly provided or obtained someone's labor or services through force, threats of force, physical restraint, or threats of physical restraint to that person or another person; by means of serious harm or threats of serious harm to that person or another person; by means of the abuse or threatened abuse of law or legal process; or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.  The element of abuse of law or legal process "means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some

action;" and the element of "serious harm" includes both physical and non-physical harms "including psychological, financial, or reputational harm" that in context is serious enough to compel a reasonable person in the victim's situation to perform or continue performing the service. The elements of the Trafficking offense are that someone recruited, harbored, transported, provided, or obtained someone else, by any means, for forced labor.

21. Contrary to what Mr. Bristol suggests (Bristol Casilao Report para. 38, Bristol Francis Report para. 38), the statutes do not require particular threats or passport seizure. They do not require attempted escape or recapture. They do not require lack of free time, second jobs, long hours, denials of overtime, kickbacks, promissory notes, employer-controlled bank accounts, or wage theft. They do not require reprimands, beratings, interference with mail, or other isolation. They do not require non-compliance with visa requirements or federal rules. They do not require that the recruiters' fraudulent promises be in writing. While those aspects may be present in cases that Mr. Bristol investigated or uses as the basis for his training materials, they are not required by Section 1589 or Section 1590.

### C) <u>Mr. Bristol's characterization of published cases lends a false impression that Section 1589 is limited to certain fact patterns</u>

22. Mr. Bristol sets forth, in chart form, how he feels the instant matters differ from facts included in a published 8th Circuit decision in a criminal case, *United States v. Farrell* (Bristol Casilao Report paras. 34-36, Bristol Francis Report paras. 34-36) and an unpublished civil case, *Juana Sierra Trejo v. Broadway Plaza Hotel* (Bristol Casilao Report para. 37, Bristol Francis Report para. 37). Like any other case, *Farrell*'s facts contain similarities (<u>inter alia</u>, workers returning to the employer, ominous references to being sent home in a coffin, fear of having work-based visa canceled, difference in working conditions from promises, defendants'

seeming compliance with guestworker rules) as well as differences. But most importantly, *Farrell* was prosecuted for conspiring to violate the pre-TVPA Peonage Statute, Section 1581. Peonage requires a showing of the higher standard of coercion than do its successors, Section 1589 and 1590. That Mr. Bristol's chart (Bristol Casilao Report para. 36, Bristol Francis Report para. 36) can paint the Farrells as more controlling and threatening in a Section 1581 prosecution than is alleged in this matter makes sense: in response to the limitations of the old laws, Congress specifically enacted the TVPA in order to reach more subtle forms of coercion. The *Trejo* case, which was settled in 2006, did not result in a published opinion or result in any caselaw and it is unclear where the recitation of facts cited in Mr. Bristol's report came from; it is therefore of limited value as a comparator. That matter involved the sexual harassment of cleaning staff, and was brought under the Fair Labor Standards Act, Title VII, and a host of New York state laws and tort theories as well as a forced labor allegation. Due to the settlement, conclusions cannot be drawn as to whether Section 1589 was met, much less that *Trejo* was a trafficking case and this is not, as Mr. Bristol avers. (Bristol Casilao Report para. 37, Bristol Francis Report para. 37).

23. Mr. Bristol also sets forth in chart form a number of cases, cited in my original report, to distinguish them from the instant case. Published cases require that a case has been brought to court, that it has proceeded to an appealable judgment or involved an issue of law novel enough for a opinion to have been written. In a federal criminal case, it also requires an initial finding of reasonable suspicion, the opening of a preliminary investigation, a "Grand Jury initiation memorandum" approved by the Assistant Attorney General, consideration under the Principles of Federal Prosecution, and a True Bill from a federal grand jury – all before even getting to court. Those chokepoints might skew published opinions in these matters toward

those cases that fit within prosecutors' and agents' prioritization, but they do not limit the statutes' reach only to those exact fact patterns that have previously been litigated.

24. Indeed, the bulk of the cases that Mr. Bristol analyzes were proffered in the initial report not for their fact patterns, but for the legal holdings of the written opinions. Those points of law are independent of the exact particulars of the cases, but instead govern the statutory elements and evidentiary considerations necessary thereto. Charts setting forth distinctions between the facts of cases felt to be relevant by a court to their decision and the facts of the instant matters are misleading in that they falsely suggest that the inquiry before this Court is not to assess the elements of Rule 23 or perhaps eventually the elements of the Chapter 77 offenses, but to merely see whether the facts in this matter line up with prior cases.

25. Such an approach would limit the TVPA statutes to tightly constrained set of coercive means, in contrast to the Congressional intent to reach the myriad ways in which traffickers compel service by using "subtle means" and "threats of dire consequences" against their workers.[10] Indeed, since many of the cases cited in my initial report referenced still-valid points of law from pre-TVPA cases brought under the more stringent Sections 1581, 1583, or 1584 (such as lack of affirmative duty to attempt escape, effect of climate of fear, limited time in service, etc.), Mr. Bristol's charts are misleading in that they suggest that Plaintiffs in this case must meet the higher threshold of those pre-TVPA servitude statutes – causes of action that are not alleged in this matter. Rather than being limited to a constrained and narrow set of fact patterns that would allow employers to use a broad range of coercive but subtle means, the modern statutes are instead to be read broadly: "the TVPA not only protects victims from the most heinous human trafficking crimes, but also [from] various additional types of fraud and

---

[10] Trafficking Victims Protection Act of 2000, H.R.Rep. No. 106–939 at 101(2000) (Conf.Rept.).

extortion leading to forced labor." *Nunag Tanedo v. E. Baton Rouge Parish School Board*, 790 F. Supp. 2d 1134 (C.D. CA 2011).

## CONCLUSIONS

26. Accordingly, it is my conclusion that Mr. Bristol's opinions:

A) only cursorily address and are not relevant to class certification in this matter;

B) are of limited utility in civil actions, being based on his criminal investigations and training expertise, because criminal proceedings 1) have different burdens of proof, 2) are driven by different considerations, such that the criminal system in the time that Mr. Bristol has been conducting training has largely ceded labor trafficking to civil practitioners; and 3) proceed from different interests, with Congress having created the civil cause of action to allow victims to bring cases without the gate-keeping of law enforcement; and

C) by seeking to substitute an unofficial set of "red flags" and "indicators" for the statutory elements of the Chapter 77 offenses, lend a false impression that cases brought under the TVPA are limited to certain fact patterns as opposed to Congress having created an expansive standard which reviewing courts have treated as dynamic and flexible.

Respectfully submitted,

By:_____
     Ambassador Luis C.deBaca (ret.)

Dated:  August 13, 2020

- 13 -

# Exhibit 1
## Materials Reviewed

**Case-specific Materials Reviewed**

*Casilao, et al, v. Hotelmacher LLC, et al*, Case No. CIV-17-800-M and *Francis v. Apex, USA et al*, Case No: CIV-18-583-HE:

    Class Action Complaints

    Depositions of Plaintiffs Garcia, Kennedy, Lincuna, and Pearce

    Depositions of Walter Schumacher and Carolyn Schumacher as corporate representatives of Defendant APEX USA Inc.

    Materials from Department of Labor investigation

    Materials from Human Resources files

    Miscellaneous discovery materials, including affidavits and drafts.

**Additional materials reviewed:**

*Adia v. Grandeur Mgmt., Inc.,* 933 F.3d 89, 91 (2d Cir. 2019).

*Aguirre v. Best Care Agency,* 961 F.Supp. 2d 427 (E.D. NY 2013).

*Amchem Prods. Inc. v. Winsor*, 521 US. 591, 623-24 (1997).

*Amgen, Inc. v. CT Retirement Plans and Trust Funds,* 568 U.S. 455, 466 (2013).

Amy Farrell et al., "Policing Labor Trafficking in the United States," 23 TRENDS IN ORGANIZED CRIME 36, at 42-43 (2019).

*Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019).

*Camayo v. John Peroulis & Sons Sheep, Inc.,* 2012 WL 4359086, 19 Wage & Hour Cas.2d (BNA) 1382 (D. Colo. 2012).

Clinton, Oklahoma, Chamber of Commerce, https://clintonok.org/

*David v. Signal*, 2012 U.S. Dist. LEXIS 114247 (E.D. LA, 2020)

*Elat v. Ngoubene*, 993 F.Supp. 2d 497 (D. Md. 2014).

Freeman Klopott, "World Bank economist gets day in jail for lying to FBI," *Washington Examiner* (July 04, 2010), available online at https://www.washingtonexaminer.com/world-bank-economist-gets-day-in-jail-for-lying-to-fbi

*Garcia v. Cartwright*, 2012 WL 1831865 (D. Or. 2012).

*Guobadia v. Irowa*, 103 F.Supp. 325 (E.D. NY 2015).

Human Trafficking Inst., 2018 FEDERAL HUMAN TRAFFICKING REPORT 7 (2019), available online at https://www.traffickingmatters.com/wp-content/uploads/2019/04/2018-Federal-Human-Trafficking-Report-Low-Res.pdf

Human Trafficking Legal Ctr.,*Federal Human Trafficking Civil Litigation: Fifteen Years of the Private Right of Action* 11 (2018), available online at https://www.htlegalcenter.org/Wp-Content/Uploads/Federal-Human-Trafficking-Civil-Litigation-1.Pdf

*Kiwanuka v. Bakilana*, 2012 WL 593065 (D.D.C.), 18 Wage & Hour Cas.2d (BNA) 1506 (2012).

*Mojsilovic v. Oklahoma ex rel. Bd. of Regents* CIV-14-886-R (W.D. Okla. Apr. 3, 2015).

*Menocal v. Geo Group*, 882 F.3d 905 (10th Cir. 2018).

National Guestworker Alliance, "*Leveling the Playing Field: Reforming the H-2b Program to Protect Guestworkers and U.S. Workers*" (Feb. 2012).

National Human Trafficking Hotline, "Recognizing the Signs," available online at https://humantraffickinghotline.org/human-trafficking/recognizing-signs

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Board*, 2011 U.S. Dist LEXIS 152329 (C.D. CA, 2011).

*Paguirigan v. Prompt Nursing Empl. Agency LLC,* 286 F. Supp. 3d 430 (E.D. NY 2017).

*Peonage Cases,* 123 F. 671 (M.D. Ala. 1903).

*Panwar v. Access Therapies*, 2015 U.S. Dist. LEXIS 7584 (S.D. IN 2015).

Polaris, "*Labor Trafficking in the U.S.: A Closer Look at Temporary Work Visas*" (Oct. 2015).

*Rosas v. Sabarnand Farms,* LLC 329 F.R.D. 671, 689 (W.D. WA 2018).

*Shukla v. Sharma*, 2012 WL 481796 (E.D. NY 2012).

Southern Poverty Law Center, "*Close to Slavery: Guestworker Programs in the United States*" (2013).

Transparency International, Corruption Perception Index and Corruption Barometer, available at https://www.transparency.org/en/cpi

*Trejo v. Broadway Plaza Hotel*, Case No. 04 Civ. 4005 LTS DFE (S.D. N.Y.), Memorandum and Order (Feb. 10, 2006).

United Nations Office of Drugs and Crime, "*The Role of Recruitment Fees and Abusive and Fraudulent Recruitment Practices of Recruitment Agencies in Trafficking in Persons*" (Vienna, 2015).

United Nations Protocol to Prevent, Suppress, and Punish Trafficking in Persons, especially Women and Children ("Palermo Protocol") (2000), supplementing the U.N. Convention Against Transnational Organized Crime.

United States Constitution, Amdt. XIII

United States Code, Title 18, Chapter 77 "Peonage, Slavery, and Trafficking in Persons" (2018)

United States Code of Federal Regulations, Title 22, Section 62.22 "Trainees and Interns."

United States Code of Federal Regulations, Title 22, Section 62.23 "Summer work travel."

United States Code of Federal Regulations, Title 29, Section 503.16 "Assurances and obligations of H-2B employers."

United States Department of Justice, "Principles of Federal Prosecution," U.S. ATTORNEYS' MANUAL 9-27.220.

United States Department of State, "Country Reports on Human Rights Practices."

U.S. Department of State, "Exchange Visitor Program," available at https://j1visa.state.gov/about-us/

United States Department of State, "Trafficking in Persons Report."
.
United States Fed. R. Civ. Pro. Rule 23

United States Government Accountability Office, *"H-2A and H-2B Visa Programs: Increased Protections Needed For Foreign Workers,"* GAO-15-154 (Mar. 2015).

United States Senate, "A Resolution Supporting the Observation of National Trafficking and Modern Slavery Prevention Month During the Period Beginning on January 1, 2019, and Ending on February 1, 2019, To Raise Awareness of, and Opposition to, Human Trafficking And Modern Slavery." S.Res. 36 (Feb. 12, 2019).

United States Victims of Trafficking and Violence Protection Act ("TVPA"), P.L. 106-386 (2000), legislative history H.R.Rep. No. 106–939, at 101(2000)(Conf.Rep.), and subsequent

reauthorizations:  P.L.108-193 (2003); P.L.109-164 (2005); P.L. 110-457 (2008); P.L. 113-4 (2023) and P.L.115-425 (2019).

*United States v. Alzanki*, 54 F.3d 994, 1001-02 (1st Cir. 1995).

*United States v. Bibbs,* 564 F.2d 1165, 1168 (5th Cir. 1977).

*United States v. Booker*, 655 F.2d 562, 566 (4th Cir. 1981).

*United States v. Bradley,* 309 F.3d 145 (1st Cir. 2004).

*United States v. Calimlim,* 538 F.2d 706 (7th Cir. 2008).

*United States v. Callahan,* 801 F.3d 606 (6th Cir. 2015).

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011).

*United States v. Djoumessi*, 538 F.3d 547 (6th Cir. 2008).

*United States v. Farrell,* 563 F.3d 364 (8th Cir. 2009).

*United States v. Garcia*, 2003 WL 22956917 (W.D. NY, 2003).

*United States v. Harris*, 701 F.2d 1095, 1100 (4th Cir. 1983).

*United States v. Ingalls,* 73 F. Supp. 76, 77-78 (S.D. Cal. 1947).

*United States v. Kalu*, 791 F.3d 1194 (10th Cir. 2015)

*United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008)

*United States v. Kozminski,* 487 U.S. 931 (1988).

*United States v. Pipkins*, 378 F.3d 1281, 1297 (11th Cir.2004).

*United States v. Rivera*, 2012 WL 2339318 (E.D. NY 2012).

*United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010).

*United States v. Veerapol* 312 F.3d 1128 (9th Cir. 2002).

*United States v. Warren*, 772 F.2d 827, 833-34 (11th Cir. 1985).

*Velez. v. Sanchez,* 693 F.3d 308 (2d Cir. 2012).

Verite, "*Help Wanted: Hiring, Human Trafficking, and Modern-Day Slavery in the Global Economy*" (2009).

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

*Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527 (3d Cir. 2012).

5