# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

MADELYN CASILAO, HARRY LINCUNA, and ALLAN GARCIA, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

HOTELMACHER, LLC, dba HOLIDAY INN EXPRESS; STEAKMACHER, LLC, dba MONTANA MIKE'S STEAKHOUSE; SCHUMACHER INVESTMENTS, LLC, dba WATER ZOO; APEX USA, INC.; WALTER SCHUMACHER; and CAROLYN SCHUMACHER,

    Defendants.

Case No.: 5:17-CV-00800-SLP

**PLAINTIFFS' MOTION TO STRIKE THE EXPERT
REPORT AND TESTIMONY OF KIMBERLY MEHLMAN-OROZCO
<u>AND MEMORANDUM IN SUPPORT OF THEIR MOTION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 2

BACKGROUND ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I.     DR. MEHLMAN-OROZCO'S EXPERIENCE PRIMARILY RELATES TO SEX TRAFFICKING ........................................................................................................ 5

II.    DR. MEHLMAN-OROZCO SHOULD BE PRECLUDED FROM OPINING ON THE LEGAL STANDARD FOR FORCED LABOR ....................................................... 7

III.   DR. MEHLMAN-OROZCO SHOULD BE PRECLUDED FROM OFFERING UNRELIABLE OPINIONS ........................................................................................ 9

       1.     Dr. Mehlman-Orozco's Method of Identifying Indicia of Trafficking is Unreliable .......................................................................... 10

       2.     Dr. Mehlman-Orozco Should Be Precluded From Offering Opinions That Are Based on her Assessment of Witness Credibility ............................................................................................... 12

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                **Pages**

Copeland v. C.A.A.I.R., Inc.,
    No. 17-CV-564-TCK-JFJ,
    2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) ...................................................... 8

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993) ............................................................................................... 5

Dodge v. Cotter Corp.,
    328 F.3d 1212 (10th Cir. 2003) ............................................................................ 10

Erickson v. City of Lakewood,
    No. 19-cv-02613-PAB-NYW,
    2021 WL 4438035 (D. Colo. Sept. 27, 2021) ................................................. 13, 14

Lippe v. Howard,
    287 F. Supp. 3d 1271 (W.D. Okla. 2018) ........................................................... 5, 6

Martinez-Rodriguez v. Giles,
    31 F.4th 1139, 1156 (9th Cir. 2022) ....................................................................... 8

Milne v. USA Cycling Inc.,
    575 F.3d 1120 (10th Cir. 2009) .............................................................................. 5

Prager v. Campbell County Memorial Hospital,
    731 F.3d 1046 (10th Cir. 2013) ............................................................................ 13

Ralston v. Smith & Nephew Richards, Inc.,
    275 F.3d 965 (10th Cir. 2001) ................................................................................ 6

Rimbert v. Eli Lilly & Co.,
    No. CIV 06-0874 JCH/LFG, 2009 WL 2208570 (D.N.M. July 21, 2009),
    aff'd, 647 F.3d 1247 (10th Cir. 2011) ................................................................... 12

U.S. v. Hill,
    749 F.3d 1250 (10th Cir. 2014) ............................................................................ 12

U.S. v. Kozminski,
    487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) ................................. 7

U.S. v. Nacchio,
    555 F.3d 1234 (10th Cir. 2009) .............................................................................. 5

U.S. v. Richter,
    796 F.3d 1173 (10th Cir. 2015) .......................................................................... 7, 9

**PRELIMINARY STATEMENT**

Defendants' proffered expert's area of expertise is sex trafficking, inapplicable to the situation here. To the extent that Dr. Mehlman-Orozco attempts to analyze this case, she does so by using a flawed method, ignoring relevant facts when applying her method, and inappropriately assessing the credibility of the witnesses. Consequently, Dr. Mehlman-Orozco's report impermissibly propounds opinions not grounded in the alleged facts. To the extent that Dr. Mehlman-Orozco attempts to offer opinions on whether the evidence in this case supports a claim of labor trafficking, the Court should strike Dr. Mehlman-Orozco's report for the following reasons:

First, Dr. Mehlman Orozco's opinion stem solely from inapplicable experience. Dr. Mehlman Orozco has worked extensively on sex trafficking cases, but not labor trafficking cases. In light of Dr. Mehlman-Orozco's limited relevant experience with this type of trafficking case, compounded by her lack of legal training, her proffered testimony regarding the standard for trafficking claims will be unhelpful to the Court and is impermissible as a matter of law.

Second, Dr. Mehlman-Orozco's opinions are based on her use of a flawed and unreliable methodology. She purports to draw upon the Delphi Survey, yet she picks and chooses which factors to give weight to in a manner that is neither scientific not transparent.  Dr. Mehlman-Orozco ignored indicators of trafficking contained in the Delphi Survey, which she relies upon in her report, that have been alleged by Plaintiffs in favor of indicia identified as relevant to sex trafficking claims rather than forced labor claims.  As such, Dr. Mehlman-Orozco's methodology is unreliable.

2

<u>Finally</u>, Dr. Mehlman-Orozco improperly assessed the credibility of witnesses in forming her opinion. As such, her opinion usurps the role of the jury and must be excluded.

## **BACKGROUND**

Dr. Mehlman-Orozco is an academic who has published in the field of human trafficking, with an emphasis on sex trafficking. (Ex. 1 at 4, 43-46.) Dr. Mehlman-Orozco has been offered as an expert witness in roughly twenty cases, almost all of which concerned sex trafficking rather than labor trafficking. (Ex. 1 at 42-43, 49-50, Ex. 2 at 114:23-115:17.) She is not an attorney, and has no formal legal education. (Ex. 2 at 23:18-22.)

Dr. Mehlman-Orozco opines that "[t]he allegations in this present case, even if accepted as true, are objectively not consistent with reliable principles and scientific methods on the indicia of human trafficking." (Ex. 1 at 34.) During her deposition, she claimed that every trafficking case contains the element of modern slavery. (Ex. 2 at 46:6-10.) She stressed the importance of "strong indicators" of trafficking in forming her conclusion. (Ex. 1 at 8, Ex. 2 at 84:10-16.) She also criticized the opinions of Plaintiffs' expert Ms. Florence Burke, claiming that they are based on "unsupported speculation and subjective belief." (Ex. 1 at 15.)

During her deposition, Dr. Mehlman-Orozco identified three main sources for her opinions: (1) the Delphi survey and similar protocols or indicia of trafficking (Ex. 2 at 21:19-25), (2) her review of descriptions of roughly 300 trafficking cases compiled in a

database by Michigan law students in 2011 (Ex. 2 at 20:22-24), and (3) unidentified "state of the science" research (Ex. 2 at 25:12-15).

The Delphi survey was created in 2009 from surveys of human trafficking experts in the European Union. (Ex. 1 at 14.) The survey posits that there are six dimensions of human trafficking, each of these dimensions having "indicators" of trafficking. Id. These indicators are sorted into "strong," "medium," or "weak" indicators. Id. Although the Delphi survey posits that trafficking can be identified from a mix of medium or week indicators, even when strong indicia are not present, Dr. Mehlman-Orozco's analysis focuses only on what she identifies as strong indicia of trafficking. (Ex. 1 at 8, 14-15, Appendix H.) In her deposition, Dr. Mehlman-Orozco acknowledged that there has not been any study to test the sensitivity and specificity of the indicia in the Delphi survey. (Ex. 2 at 33:4-12.)

The database of cases from the University of Michigan Law School has not been updated since 2011. (Ex. 2 at 146:20-147:9.) To Dr. Mehlman-Orozco's knowledge, it was compiled by law students. (Ex. 2 at 151:20-25.) The database contained summaries of the cases it contained, which were also written by law students. (Ex. 2 at 149:13-15.) Dr. Mehlman-Orozco is unaware how cases were selected for inclusion into this database. (Ex. 2 at 152:5-8.) She stated that she relied on the summaries provided by the database and did not always read the original case documents,. (Ex. 2 at 151:6-13.) She also reported when the summary was not sufficient for her to understand the case, she skipped the case. (Ex. 2 at 149:9-15.)

4

# ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which codifies the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Under Rule 702, the district court must act as a "gatekeep[er]" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. In making that determination, "the district court performs a two-step analysis. First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion. . . . Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable." Milne v. USA Cycling Inc., 575 F.3d 1120, 1134 (10th Cir. 2009) (citations omitted). The party introducing the expert testimony bears the burden of proving its admissibility. U.S. v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). Defendants cannot meet that burden.

## I. DR. MEHLMAN-OROZCO'S EXPERIENCE PRIMARILY RELATES TO SEX TRAFFICKING, NOT LABOR TRAFFICKING

Dr. Mehlman-Orozco lacks the relevant experience and expertise to assist the trier of fact in determining the presence of labor trafficking. The Tenth Circuit has utilized a "focused approach to determining an expert's qualifications," namely testing whether "[t]he expert's qualifications . . . [are] both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education,' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert." Lippe v. Howard, 287 F. Supp. 3d 1271, 1279 (W.D. Okla. 2018) (citation omitted); see, e.g., Milne, 575 F.3d at

1133 (holding that expert in paved road bike races was not qualified to opine on mountain bike races, which follow "different . . . rules and practices"); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001) (holding that orthopedic surgeon was not qualified to opine on orthopedic device she had not used or studied).

This case is about labor trafficking. Dr. Mehlman-Orozco's prior experience, however, as described on her CV, primarily concerns sex trafficking. (Ex. 1 at Appendix A.) For example, when asked about her prior expert witness experience, Dr. Mehlman-Orozco noted that only two of her twenty or so prior expert witness retentions involved labor trafficking claims: one case that dealt solely with labor trafficking, and a second case that dealt with sexual allegations characterized as labor trafficking. (Ex. 2 at 114:16-115:17.) This disconnect between Dr. Mehlman-Orozco's experience and the allegations here is important because Dr. Mehlman-Orozco acknowledges that labor trafficking and sex trafficking are distinct areas in the human trafficking field. (Ex. 2 at 18:10-18 ("I would say there's an umbrella notion of human trafficking and that two major subsections are labor trafficking and sex trafficking. And in each of those there are different forms of labor trafficking and sex trafficking.").) Further, she acknowledges that the indicia used to identify labor trafficking versus sex trafficking differ. (Ex. 2 at 20:1-5.) Thus, her limited experience with the specific type of trafficking at issue here renders her unqualified to opine in this case. See Lippe, 287 F. Supp. 3d at 1279 (requiring not just general qualifications, but also specific qualifications relevant to the case at hand).

## II. DR. MEHLMAN-OROZCO SHOULD BE PRECLUDED FROM OPINING ON THE LEGAL STANDARD FOR FORCED LABOR

Dr. Mehlman-Orozco could be precluded from opining on the standard for a forced labor claim under the TVPRA and whether the facts in this case meet those claims. "To ensure testimony is helpful, '[a]n expert may not state legal conclusions drawn by applying the law to the facts.'" U.S. v. Richter, 796 F.3d 1173, 1195 (10th Cir. 2015) (alternation in original) (citation omitted). Despite lacking any solid basis for offering legal opinions, Dr. Mehlman-Orozco when asked about the language of the TVPRA, stated "I think the read of the letter of the law is clear." (Ex. 2 at 72:6-7.) She further clarifies that she was opining in her report on what trafficking means under the TVPRA. (Ex. 2 at 76:24-77:6.) When she speaks of trafficking, she claims to speak of "[t]rafficking as it's defined by these statutes." (Ex. 2 at 77:13-17.) While "an expert may refer to the law in expressing his or her opinion," id., Dr. Mehlman-Orozco has no formal legal education, (Ex. 2 at 23:18-22), and her report and testimony demonstrate that she misunderstands the relevant legal standard applicable to Plaintiffs' claims.

First, in her report and during her deposition, Dr. Mehlman-Orozco repeatedly opined that trafficking claims require some showing of "modern slavery." (E.g., Ex. 2 at 45:17-46:19.) However, as the Ninth Circuit recently noted in reject the defendants' argument that the alleged "circumstances did not involve the sort of conditions that are comparable to 'modern-day slavery'":

> This argument ignores the breadth of the statutory language of § 1589, which we have previously observed was enacted to abrogate, as a practical matter, the Supreme Court's narrow interpretation of "involuntary servitude" in United States v. Kozminski, 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d

> 788 (1988) (construing 18 U.S.C. §§ 241, 1584 (1982 ed.)). See Dann, 652 F.3d at 1169. The fact that Plaintiffs were not reduced to slave-like peonage does not mean Funk Dairy did not violate the particular prohibition set forth in § 1589(a)(3).

Martinez-Rodriguez v. Giles, 31 F.4th 1139, 1156 (9th Cir. 2022); see also Copeland v. C.A.A.I.R., Inc., No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *9 (N.D. Okla. Sept. 11, 2019) (recognizing that a claim for forced labor under 18 U.S.C. § 1589 is broader than a claim for involuntary servitude under 18 U.S.C. § 1584). Similarly, Dr. Mehlman-Orozco draws her definition of labor trafficking not from the provisions of the TVPRA that are the basis for Plaintiffs' claim, but from the definition for "severe form[s] of trafficking" used to determine whether a trafficking victim qualifies for a T-visa. (See Ex. 1 at 6; 22 U.S.C. § 7102.(11)(B) (definition of "[s]evere forms of trafficking in persons"); 8 U.S.C. § 1101(a)(13)(T)(i)(I).)

Second, while Dr. Mehlman-Orozco may be familiar with trafficking in an academic sense, she has little, if any, understanding of the legal requirements to prove a claim under the TVPRA. When asked about the basis of her opinion of the scope of a trafficking claim under the TVPRA, she claims that her understanding was based in large part on her review of 300 trafficking cases, which she had previously distilled into a more limited set of what she views as representative trafficking cases and which she attached to her report as Appendix G. (Ex. 2 at 20:13-24; see also Ex. 1 at Appendix G.) However, her review consisted not of independent legal research (which she is not trained for), but of reading descriptions of legal opinions and complaints contained in a database from the University of Michigan Center of Human Trafficking that she received in 2011. (Ex. 2 at

23:2-6, 146:20-147:9.) To Dr. Mehlman-Orozco's knowledge, the database was put together by law students who prepared summaries of trafficking-related cases, with some summaries as short as one or two sentences. (Ex. 2 at 149:13-15, 151:20-25.) Dr. Mehlman-Orozco admits to relying on those summaries to determine whether cases might be relevant and only reviewing some of the original case documents. (Ex. 2 at 151:6-13.) Further, when asked about the criteria used by the creators of the database to identify what cases to include in this database, she responded, "I don't recall." (Ex. 2 at 152:5-8.) Yet she purports to use this database in forming her understanding of the standard for trafficking under the TVPRA.

Dr. Mehlman-Orozco cannot merely look at the language of a statute, and descriptions of cases drafted by law students, with no knowledge of how those case were selected or training to assess which cases are binding on this Court, and from there offer legal conclusions on what constitutes trafficking under the TVPRA. See Richter, 796 F.3d at 1195. Such testimony is beyond the scope of Dr. Mehlman-Orozco's purported expertise, is unhelpful to the jury, and attempts to offer an impermissible legal conclusion.

### III. DR. MEHLMAN-OROZCO SHOULD BE PRECLUDED FROM OFFERING UNRELIABLE OPINIONS

Dr. Mehlman-Orozco's proffered opinions are also inadmissible because they are unreliable and do not fit the facts of the case. Although she purports to be applying "state of the science research," Dr. Mehlman-Orozco's method for identifying whether indicia of trafficking are present is ultimately based on her subjective analysis of "the totality of

the circumstances." Further, Dr. Mehlman-Orozco employed an incomplete and arbitrary application of her purported method. Any conclusions reached through her method are unreliable for three independent reasons: (i) Dr. Mehlman-Orozco misapplied her method by ignoring the indicia of trafficking that supported Plaintiffs' position, (ii) Dr. Mehlman-Orozco cursory review of a limited set of case materials results in an inaccurate view of the evidence, and (iii) Dr. Mehlman-Orozco applied her own assessment of witness credibility in determining which indicia of trafficking were present. Accordingly, she should be precluded from opining on whether any indicia of trafficking is present in this case. See Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) ("[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." (citation omitted)).

### 1. Dr. Mehlman-Orozco's Method of Identifying Indicia of Trafficking is Unreliable

Dr. Mehlman-Orozco's method of analysis is unreliable. Dr. Mehlman-Orozco purports to rely on a number of factors in reaching her conclusions. (Ex. 2 at 22:6-7.) These include the Delphi Survey (Ex. 2 at 21:19-25), the cases from the Michigan database (Ex. 2 at 20:22-24), and prior interviews she has conducted with victims and traffickers (Ex. 2 at 20:25-21:3). But her method for reconciling these sources is not clear, and her explanations often boil down to citing the "totality of the circumstances." When asked about whether various factors could be indicia of trafficking, she repeatedly responded by saying that it depends on the totality of the circumstances, and she refused

to give weight to any specific indicia. (Ex. 2 at 182:8-9, 184:13-16, 186:25-187:2, 189:1-5, 191:2-5.)

Dr. Mehlman-Orozco focuses her report on what the Delphi Survey calls "strong indicators," yet she acknowledges that strong indicators are not required to find trafficking under the Delphi Survey. (Ex. 2 at 84:10-18.) But while her report purports to draw from the strong indicia indicators by the Delphi Survey, (Ex. 1 at 8, Appendix I), the indicators that she ultimately identifies as strong indicia of trafficking in her Opinions IV through VII do not correspond to the strong indicia for labor trafficking in the Delphi Survey, and instead include a mix of strong and medium indicators for both labor trafficking and sex trafficking. For example, Dr. Mehlman-Orozco opines that being deceived about access to education opportunities or forced marriage can be strong indicia of trafficking. (Ex. 1 at 8.) The former was identified by the Delphi survey as a weak indicator of deceptive recruitment, one of the dimension of labor trafficking. (Id. at 52.) By contrast, the Delphi survey indicates that deception about wages and earnings – one of the Plaintiffs' central allegations – is a medium indicator of deceptive recruiting, but one that Dr. Mehlman-Orozco largely ignores. (Id.) On the other hand, forced marriage is not an indicia of labor trafficking at all, but rather of sex trafficking. (Id. at 54.) Thus, Dr. Mehlman-Orozco's analysis is shrouded in subjectivity and inconsistency, combining several modes of analysis in a manner not readily understandable to others, and certainly not helpful to a jury.

Dr. Mehlman-Orozco arbitrarily applied the Delphi Survey by selectively ignoring those indicia that are consistent with Plaintiffs' position and that are relevant to the case.

As noted above, the Delphi Survey does not require Strong Indicators to positively identify trafficking. (Ex. 2 at 84:10-18.) Yet, Dr. Mehlman-Orozco completely ignored the numerous Medium indicators for labor trafficking that are present in this case, such as "deceived about housing and living conditions," "deceived about travel and recruitment conditions," "deceived about wages/earnings," "debt bondage," "threats of violence against victim," "dependency on exploiters," and "family situation" as medium indicators of trafficking, just to name a few. (See Ex. 3 at ¶ 14.) Dr. Mehlman-Orozco's application of the Delphi Survey merely cherry-picks certain indicia, and clearly constitutes an incomplete and inaccurate application of that method. Rimbert v. Eli Lilly & Co., No. CIV 06-0874 JCH/LFG, 2009 WL 2208570, at *20 (D.N.M. July 21, 2009) ("A methodology that inexplicably ignores material facts and relies only on selective evidence does not lead to a reliable opinion."), aff'd, 647 F.3d 1247 (10th Cir. 2011). Thus it must be excluded.

### 2. Dr. Mehlman-Orozco Should Be Precluded From Offering Opinions That Are Based on her Assessment of Witness Credibility

Because the credibility of witnesses rests within the exclusive province of the factfinder, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony. . . [as it] (1) 'usurps a critical function of the jury'; (2) 'is not helpful to the jury, which can make its own determination of credibility'; and (3) . . . 'is prejudicial and unduly influences the jury.'" U.S. v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014) (first alteration in original) (citations omitted). As such, the Court should exclude Dr. Mehlman-Orozco's opinions to the extent that they rest on her assessment of the

credibility of the parties. Erickson v. City of Lakewood, No. 19-cv-02613-PAB-NYW, 2021 WL 4438035, at *11 (D. Colo. Sept. 27, 2021) ("[T]he Court will exclude any testimony . . . which . . . 'apprais[es] credibility, determine[es] the weight to be given to the testimony, draw[s] inferences from the facts established, resolv[es] conflicts in the evidence, [or] reach[es] ultimate conclusions of fact.'") (alterations in original) (citing Prager v. Campbell Cnty. Mem'l Hosp., 731 F.3d 1046, 1063 (10th Cir. 2013)).

For example, Dr. Mehlman-Orozco impermissibly speculates about the intent behind statements made by Defendant Walter Schumacher to the Plaintiffs and draws conclusions of fact based on her interpretation. Regarding the allegedly threatening nature of Mr. Schumacher's statement to one of the Named Plaintiffs about a gun in his glove compartment, Dr. Mehlman-Orozco states "I do not believe that is clear, I do not believe that was the intent behind the statement." (Ex. 2 at 201:4-6.) Further, regarding another Named Plaintiff's testimony that she became fearful when she learned that Mr. Schumacher was regularly visiting the motel where the Plaintiffs and other class members lived, Dr. Mehlman-Orozco stated that "I wouldn't put a lot of weight or any weight on that." (Ex. 2 at 211:8-20.) Dr. Mehlman-Orozco plainly and impermissibly discredited Plaintiffs' testimony. This type of speculation usurps the factfinding role of the jury. The existence of a threat of violence is especially critical because Dr. Mehlman-Orozco identifies an overt or explicit threat of violence as a strong indicator of trafficking. (Ex. 2 at 200:3-5.) She further opines that an overt threat "tends to be pretty clear of what the intent was." (Ex. 2 at 200:23-24.) Thus, under Dr. Mehlman-Orozco's proffered analysis, the intent of the speaker, and the determination whether a statement or

13

action was a "threat" or not, will be a key factual determination for a jury. It is not permissible for Dr. Mehlman-Orozco to opine on these factual questions and draw conclusions based on her own resolution of the facts. See Erickson, 2021 WL 4438035, at *11.

## **CONCLUSION**

For all of the foregoing reasons, the Court should strike the report and testimony of Dr. Mehlman-Orozco in its entirety.

Dated: July 15, 2022      Respectfully Submitted,

*/s/ Catherine Fisher*
Megan Lambert
ACLU OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Telephone: (405) 525-3831
Facsimile: (405) 524-2296
Email: mlambert@acluok.org

George Warner, Pro Hac Vice
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
Emails: gwarner@legalaidatwork.org

Eben Colby, Pro Hac Vice
Catherine Fisher, Pro Hac Vice
500 Boylston Street, 23rd Floor
Boston, MA 02116
Telephone: (617) 573-4855
Facsimile: (617) 305-4855
Emails: Eben.Colby@probonolaw.com
    Catherine.Fisher@probonolaw.com

Alyssa Musante, Pro Hac Vice
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone:   (213) 687-5223
Facsimile:    (213) 621-5223
Email:  Alyssa.Musante@probonolaw.com

Christopher J. Willett, Pro Hac Vice
Caitlin Boehne, Pro Hac Vice
EQUAL JUSTICE CENTER
314 E. Highland Mall Blvd., Ste 401
Austin, TX 78752
Telephone:   (512) 474-0007
Facsimile:    (512) 474-0008
Emails: cwillett@equaljusticecenter.org
         cboehne@equaljusticecenter.org

***Attorneys for Plaintiffs***