# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

MADELYN CASILAO, HARRY
LINCUNA, and ALLAN GARCIA, on
behalf of themselves and all others
similarly situated,

           Plaintiffs,

    v.

HOTELMACHER LLC, dba HOLIDAY
INN EXPRESS; STEAKMACHER, LLC,
dba MONTANA MIKE'S STEAKHOUSE;
SCHUMACHER INVESTMENTS, LLC,
dba WATER ZOO; APEX USA, INC.;
WALTER SCHUMACHER; and
CAROLYN SCHUMACHER,

        Defendants.

Case No.: CIV-17-800-SLP

# PLAINTIFFS' UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF CLASS
## <u>SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT</u>

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

    I.     FACTUAL BASIS FOR CLAIMS ............................................................... 2

    II.    PRE-SETTLEMENT PROCEDURAL HISTORY ....................................... 3

    III.   NEGOTIATION OF THE SETTLEMENT AGREEMENT ........................ 4

    IV.   THE SETTLEMENT AGREEMENT ......................................................... 5

    V.    THE PROPOSED NOTICE OF SETTLEMENT ....................................... 7

         A.    Direct Notice to Class Members ....................................................... 7

         B.    Settlement Website ........................................................................... 8

ARGUMENT ..................................................................................................................... 9

    I.     LEGAL STANDARD ............................................................................... 9

    II.    THE COURT SHOULD PRELIMINARILY APPROVE THE
          SETTLEMENT AND ORDER NOTICE TO THE CLASS ..................... 11

         A.    The Court Has Already Certified the Class ...................................... 11

         B.    The Proposed Settlement is Fair, Reasonable, and Adequate .......... 12

             (i)      The Class Representatives and Class Counsel Have
                      Adequately Represented the Class ........................................ 12

             (ii)     The Settlement "was Negotiated at Arm's Length" ............. 13

             (iii)    The "Relief Provided for the Class is Adequate,"
                      Given the Risks of Continuing Litigation ............................. 13

             (iv)    The Method of Distributing Relief is  Fair to the Class,
                      and Designed to Make it Easy for Class Members to
                      Receive Payment .................................................................. 15

             (v)     The Maximum Allowable Award of Costs and Fees is
                        Fair, and Contingent on Court Approval ............................. 15

             (vi)    The Settlement "Treats Class Members Equitably
                        Relative To Each Other" ...................................................... 15

             (vii)   There is no Separate Agreement to Address ......................... 17

III.    THE PROPOSED NOTICE PLAN IS THE BEST NOTICE
        PRACTICABLE UNDER THE CIRCUMSTANCES ............................... 17

IV.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ......................... 18

CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Belvis v. Colamussi*,
    No. CV 16-544 (JFB)(ARL), 2018 WL 3151698 (E.D.N.Y. Feb. 20, 2018) ........ 14

*Chieftain Royalty Company v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    888 F.3d 455 (10th Cir. 2017) ................................................................................ 16

*DeJulius v. New England Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ................................................................................ 17

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust*
    *Litigation*,
    No. 17-md-2785-DDC-TJJ, 2022 WL 2663873 (D. Kan. July 11, 2022) ........... 16

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ................................................................................. 17

*Harris v. Chevron U.S.A., Inc.*,
    No. CIV-15-cv-0094-PRW, 2019 WL 5846917 (W.D. Okla. July 29, 2019) ... 9, 11

*Leiva v. Clute*,
    No. 4:19-CV-87-TLS-JPK, 2020 WL 8514822 (N.D. Ind. Dec. 16, 2020),
    *report and recommendation adopted*, No. 4:19-CV-87 RLM-JPK, 2021
    WL 307302 (N.D. Ind. Jan. 29, 2021) ................................................................... 14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................... 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .............................................................................. 10

*In re Samsung Top-Load Washing Machine Marketing, Sales Practices &*
    *Products Liability Litigation*,
    997 F.3d 1077 (10th Cir. 2021) .............................................................................. 15

*Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*,
    No. 1:18-CV-00030, 2021 WL 2065398) ............................................................. 14

*West v. Butikofer*,
    No. 19-CV-1039-CJW-KEM,
    2020 WL 5245226 (N.D. Iowa Aug. 18, 2020) .................................................... 14

iii

## **STATUTE**

18 U.S.C. § 1589 ...................................................................................................... 1, 14

## **RULES**

Fed. R. Civ. P. 23(b) ................................................................................................. 11, 17

Fed. R. Civ. P. 23(c) ..................................................................................................... 17

Fed. R. Civ. P. 23(e) ................................................................................................. *passim*

Fed. R. Civ. P. 23(f) ......................................................................................................... 3

## **RULES**

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:10 (6th
      ed., Westlaw updated 2023) .................................................................................. 9

5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 17:1 (6th
      ed., Westlaw updated 2023) ................................................................................ 16

**INTRODUCTION**

Plaintiffs Madelyn Casilao, Harry Lincuna, and Allan Garcia (collectively, "Plaintiffs") respectfully move under Federal Rule of Civil Procedure 23(e), for preliminary approval of a class action settlement between themselves and Defendants Hotelmacher LLC, dba Holiday Inn Express; Steakmacher, LLC, dba Montana Mike's Steakhouse; Schumacher Investments, LLC, dba Water Zoo; Apex USA, Inc.; Walter Schumacher; and Carolyn Schumacher ("Defendants") (together with Plaintiffs, the "Parties"), and entry of the Preliminary Approval Order attached as Exhibit 2 to the Declaration of George Warner.[1]  The proposed Class Action Settlement Agreement, if approved, will resolve the claims asserted by Plaintiffs and will provide substantial monetary benefit to class members.[2]

**BACKGROUND**

In 2017, the named Plaintiffs brought suit on behalf of a class of 23 Filipino workers against Walter Schumacher, Carolyn Schumacher, and a number of corporate defendants owned by them for allegedly violating 18 U.S.C. § 1589's prohibition against Forced Labor and allegedly breaching contracts made with the class and the Filipino government.  Dkt. No. 1, Complaint ¶¶ 7, 103-36.  The parties entered into a settlement

---

[1]     Defendants' counsel has reviewed the present motion and has advised that Defendants do not oppose the relief requested herein.

[2]     All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1 to the Declaration of George Warner

agreement resolving those claims on January 26, 2024.  Warner Decl. Ex. 1 (hereinafter, "Settlement Agreement").

## I.  <u>FACTUAL BASIS FOR CLAIMS</u>

The lawsuit is based on the following allegations:  In 2012, Defendant Walter Schumacher and the other Defendants recruited the class members to work as waiters and housekeepers at his properties.  Dkt. No. 1, Complaint ¶ 2.  To obtain these workers, he promised the Department of Labor ("DOL") that they would provide full-time work at prevailing wages.  Dkt. No. 1, Complaint ¶¶ 41-44.  He promised the Philippine Overseas Employment Administration ("POEA") that the class members would receive free food and free housing, or an allowance; free transportation to and from the Philippines; and other benefits.  *Id.* ¶¶ 38-39.  These promises were also made to the class members directly.  *Id.* ¶¶ 50-58.  Absent Defendants' assurances, class members would not have received H-2B visas, been able to leave the Philippines, or committed to work for him.  *Id.* ¶¶ 38-39, 49, 59.

The class asserts the Defendants engaged in a bait and switch.  When class members arrived in rural Oklahoma, Defendants ignored their obligations.  *Id*. ¶¶ 70-72.  Class members did not receive free housing and paid to live in overcrowded motels.  Defendants did not reimburse the substantial cost of airfare to Oklahoma; the class members stayed in debt. Defendants paid less than the prevailing wages, and were placed in other jobs, unauthorized by the H-2B visas.  Class members were also given far less than full-time work, despite the promises to the POEA and DOL.  *Id.* ¶¶ 74.  Defendants have denied any and all allegations of wrongdoing.

## II. <u>PRE-SETTLEMENT PROCEDURAL HISTORY</u>

In 2019, the Court denied Defendants' motions to dismiss.  Dkt. No. 61.  In February 2020, the Court granted Plaintiffs a protective order regarding the location, immigration and employment status of members of the class, and denied a related motion to compel filed by Defendants.  Dkt. No. 96.  In September 2021, after substantial discovery, the Court granted the Plaintiffs' class certification motion.  Dkt. No. 189.  In October 2021, the court appointed Megan Lambert of the ACLU of Oklahoma, Christopher Willett and Caitlin Boehne of Equal Justice Center, George Warner of Legal Aid at Work and pro bono counsel Eben Colby, Catherine Fisher and Alyssa Musante as class counsel.  Dkt. No. 197.  Also in October 2021, Defendants filed a petition under Rule 23(f) to appeal the order granting class certification.  This petition was denied by the Tenth Circuit.  *Hotelmacher, LLC v. Casilao*, Docket No. 21-00601, BL-7 (10th Cir. Nov. 23, 2021).  In December 2021, the Court approved the Plaintiffs' proposed notice to the class of the certification decision, and Plaintiffs distributed the approved class notice by email, website and publication.  Dkt. No. 203; Warner Decl. ¶ 14.  No class member contacted Class Counsel to opt-out of the Class following distribution of the class notice. Warner Decl. ¶ 14.

In July 2022, Defendants filed a motion to decertify the class, which Plaintiffs opposed.  Dkt. Nos. 219, 224.  In September 2022, the parties prepared pretrial submissions, including proposed jury instructions, voir dire, motions in limine, objections to voir dire, and motions in limine, in advance of a pretrial conference scheduled for October 2022.  Dkt. Nos. 230-36, 245-48.

3

In October 2022, the Court ordered a reopening of discovery, including a third-party search for responsive documents and additional depositions.  Dkt. 277.  The supplemental discovery was completed in January 2023.  *See* Dkt. No. 282.  On February 22, 2023, Defendants filed an amended motion to decertify the class, arguing that common questions do not predominate.  Dkt. No. 289.  That motion was still pending at the time the proposed settlement was agreed upon, and was denied without prejudice as moot.  Dkt. No. 301.

The parties engaged in ample discovery during the course of this action. Defendants produced over 10,000 pages of documents in this action and 20,000 pages of documents in a related action that has already been resolved, *Francis v. APEX USA Inc.*, No. 5:18-cv-583-SLP, and Plaintiffs took twelve depositions over the course of the litigation. Warner Decl. ¶ 10 (b), (d).  Plaintiffs engaged two human trafficking experts to submit reports regarding human trafficking and its impact on the Class.  Warner Decl. ¶ 10 (c).  Plaintiffs also defended seven depositions, including depositions of the named Plaintiffs, two class members, and two experts.  Warner Decl. ¶ 10(e).  During the course of the litigation, Plaintiffs have also been in contact with twenty-one of twenty-three members of the class.  Warner Decl. ¶¶ 15, 16.  Since the parties reached an agreement in principle in November 2023, Plaintiffs have been in touch with twenty of the twenty-three members of the class.  Warner Decl. ¶ 15.

## III.   NEGOTIATION OF THE SETTLEMENT AGREEMENT

This Settlement resulted from good faith, arm's-length settlement negotiations, as well as two full-day settlement discussions.  Warner Decl. ¶¶ 11, 12.

First, the parties attended a mediation on April 12, 2023, with highly respected mediator

Joe Hampton.  Warner Decl. ¶ 11.  Second, the parties attended a settlement conference

on November 8, 2023, before the Honorable Magistrate Judge Suzanne Mitchell.  Warner

Decl. ¶ 12.  In the weeks that followed the settlement conference, the Parties continued to

negotiate the remaining terms of the Settlement and drafted a comprehensive Settlement

Agreement.  Warner Decl. ¶ 13.

## IV. THE SETTLEMENT AGREEMENT

The proposed settlement contemplates Defendants paying $730,000 into a

Settlement Fund to resolve the class members' claims.  Settlement Agreement ¶ V.A. The

fund will be used to pay: (1) Class Members in exchange for a release of all claims

asserted or that could have been asserted in the Action on their behalf; (2) all claims for

reimbursement by the Settlement Administrator for expenses associated with

administering or effectuating the Settlement; (3) all claims for an award of Class

Counsel's attorneys' fees; (4) all claims for Class Counsel's reasonable litigation

expenses; and (5) Class Representative Service Awards.  *Id.* The class whose claims are

resolved by the settlement agreement is identical to the class certified by the Court in

2021:

> All Filipino nationals who obtained H-2B visas at any time from January 1,
> 2008 through December 31, 2014, who were admitted to the United States as
> H-2B temporary foreign workers, and for whom one of the Defendants was
> the H-2B petitioner or de facto employer upon arrival in the United States
> (the "Class").

Settlement Agreement ¶ III.B.  Any remaining funds under $2,000 after distribution to the Class will be paid to *cy pres* beneficiary Toward Justice.  Settlement Agreement ¶ VII.F.

Settlement payments to the class will be based on the damages model prepared by Class Counsel, which takes into account recruiting and travel costs borne by all class members regardless of their duration in Clinton, and damages that varied depending on the number of days the class member spent working for Defendants in Clinton, Oklahoma.  Settlement Agreement ¶ V.F; Warner Decl. ¶ 20.

The settlement administration is designed to make it as likely as possible that class members will receive payment.  *See* Settlement Agreement Part VII.  Class members will receive a claim form with the Notice that asks if they prefer payment by electronic payment or via physical check.  Settlement Agreement ¶ VI.D.  The Settlement Administrator is also able to make payments to class members who live internationally. Warner Decl. ¶ 9.

Those class members who respond to this request will be paid in the manner requested.  Settlement Agreement ¶ VII.C.  Class members who do not respond will have a check sent to them at their last known mailing address, if identifiable by Class Counsel or the Settlement Administrator.  *Id.*  Class members who do not cash the check within 60 days of the date it was mailed will receive a second notice of the settlement and will be given another opportunity to request payment before any residual distributions are made.  Settlement Agreement ¶ VII.E; Warner Decl. ¶ 9.  Any residual uncashed amounts after the second distribution will be paid to the class members who cashed their checks,

unless the amount is less than $2,000, in which case it will be paid to the *cy pres* beneficiary.  Settlement Agreement ¶ VII.F.

The Settlement Fund will also be used to pay the reasonable costs of notice, settlement administration, court approved service awards to the class representatives, and court approved attorneys' fees and litigation costs.  Settlement Agreement ¶¶ V.B, V.C, V.D .

Plaintiffs and Class Counsel will apply to the Court for awards to the Class Representatives for their service to the Class of up to $15,000 to each of the three Plaintiffs.  Settlement Agreement ¶ V.B.  Class Counsel will also apply to the Court for an award of attorneys' fees and reimbursement of litigation costs and expenses.  Settlement Agreement ¶ V.C.  Subject to the Court's approval, Class Counsel may seek up to $215,000 as attorneys' fees and reimbursement for their reasonable costs and expenses, which amounts to roughly 30 percent of the fund.  *Id.*  All of these amounts are subject to Court approval.

## V. <u>THE PROPOSED NOTICE OF SETTLEMENT</u>

### A. <u>Direct Notice to Class Members</u>

Subject to the Court's approval, Class Counsel will send notice of the proposed settlement via email and U.S. mail to all class members in the form attached to the Settlement Agreement as Exhibit A (the "Notice"), using the most recent email address and mailing address available to Class Counsel.  Settlement Agreement ¶ VI.C and Exhibit A (Notice).  The Notice will advise Class Members of: the pendency of the class action; the essential terms of the Settlement Agreement, including the proposed plan

7

of allocation; the date and time of the Final Approval Hearing, and set forth the

procedures for opting out of the Class, objecting to the Settlement Agreement, and

submitting a Claim Form.  *See* Settlement Agreement Ex. A.

        Class Counsel are already in active communication with the vast majority

of the class, and have been in touch with 20 of the 23 class members since reaching the

settlement in principle in November 2023.  Warner Decl. ¶ 15.  Class Counsel has a

reliable email or mailing addresses for two of the remaining three class members and has

been informed that the third class member is deceased.  Warner Decl. ¶¶ 16-18.

### B.  Settlement Website

        Class Counsel has maintained a case website at https://legalaidatwork.org/

schumacher-forced-labor-lawsuit/ since the Court approved distribution of the initial

class notice in 2021.  *See* Dkt. No. 199, 203.  Subject to the Court's approval, Class

Counsel will update the case website to include a copy of the notice of the settlement.

Settlement Agreement ¶ VI.G.  The website shall also provide the date, time and location

of the Final Approval Hearing.  *Id.*  In addition, the Settlement Administrator shall

establish a website where class members can submit their claim form.  *Id.*

        All forms of notice shall explain the procedure for a class member to object

to the Settlement or opt-out of the Class.  The proposed objection and opt-out deadlines

are sixty (60) days after the distribution of the Notice.  Settlement Agreement ¶¶ VI.E,

VI.F.

## ARGUMENT

### I.  LEGAL STANDARD

Court approval is required for any class action settlement that releases the claims of absent class members.  Fed. R. Civ. P. 23(e).  Approval is a two-step process.  "In the first stage, the Court . . . preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement."  *Harris v. Chevron U.S.A., Inc.*, No. CIV-15-cv-0094-PRW, 2019 WL 5846917, at *2 (W.D. Okla. July 29, 2019); *see also* Fed. R. Civ. P. 23(e)(1)(B).  "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:10 (6th ed., Westlaw updated 2023).  Second, after preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected.  *See id.*  At the final fairness hearing, the Court also addresses any objections to the terms of the settlement.  *See Harris*, 2019 WL 5846917, at *2; Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  "If the court has already certified a class, the

only information ordinarily necessary [for purposes of showing that the court will likely be able to certify the class] is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Approval under Rule 23(e)(2) requires that the settlement be "fair, reasonable, and adequate." In 2018, the rules was amended to specify that whether a settlement is fair, reasonable, and adequate should be determined using the following factors: (A) whether "the class representatives and class counsel have adequately represented the class;" (B) whether the settlement "was negotiated at arm's length;" (C) whether "the relief provided for the class is adequate"—taking into account the (i) "costs, risks, and delay of trial and appeal;" (ii) the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (iii) the "terms of any proposed award of attorney's fees;" and (iv) the terms of any separate agreements—and (D) whether the settlement "treats class members equitably relative to each other."[3] Fed. R. Civ. P. 23(e)(2)(A)–(D).

---

[3] Before Rule 23 was amended to enumerate the factors to consider in evaluating whether a settlement is fair, reasonable, and adequate, the Tenth Circuit used four similar factors:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Since preliminary approval is an assessment that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2)," Fed. R. Civ. P. 23(e)(1)(B), "[a] proposed settlement of a class action should . . . be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives," *Harris*, 2019 WL 5846917, at *2.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND ORDER NOTICE TO THE CLASS

The Court should preliminarily approve the settlement and order notice to the class because "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

### A. The Court Has Already Certified the Class

The Court already determined that the Class and its claims asserted in this action can and should be certified under Rule 23(b)(3). Dkt. No. 187. There are no changes to the composition of the Class or the claims that will be resolved by the Settlement Agreement. *Compare* Dkt. No. 187 at 4 *and* Settlement Agreement ¶ III.B; *see also* Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment. ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.")

### B.  <u>The Proposed Settlement is Fair, Reasonable, and Adequate</u>

The Court should enter the Preliminary Approval Order because the parties will be able to obtain approval for the proposed settlement under Rule 23(e)(2).  Each factor addressed by Rule 23(e)(2) weighs in favor of approval of the Settlement Agreement.

### (i)      *The Class Representatives and Class*
### *Counsel Have Adequately Represented the Class*

Class Counsel has vigorously litigated this case.  Counsel has engaged in significant discovery, including reviewing over 30,000 pages of documents, engaging two human trafficking experts, taking twelve depositions, and defending seven depositions.  Warner Decl. ¶ 10(b), (c), (d), (e).  Class Counsel also engaged in extensive motion practice and successfully opposed Defendants' seven motions to dismiss all claims and strike the class allegations, obtained class certification, a protective order, discovery sanctions requiring supplemental discovery, and has successfully defeated an attempt to have the case reviewed by the Tenth Circuit on an interlocutory appeal.  *Id.* at ¶ 10(a), (g), (h), (i), (k).

The class representatives have also adequately represented the class.  Each class representative has produced relevant documents and been deposed.  Warner Decl. ¶ 10(b), (e).  Ms. Casilao came to Oklahoma for the judicial settlement conference with Judge Mitchell and the other class representatives were available by phone during each of the parties' all-day settlement discussions.  *Id.* at ¶¶ 11, 12.  And all class representatives

have been instrumental in identifying other members of the class, to make sure that they are aware of the possible settlement in this case.  *Id.* at ¶ 15.

               ***(ii)***     ***The Settlement "was Negotiated at Arm's Length"***

The settlement was negotiated at arm's length.  The parties engaged in significant, prolonged negotiations to reach a settlement in this case, including two full-day settlement discussions, and multiple additional discussions between the parties. Warner Decl. ¶¶ 11-13.

               ***(iii)***     ***The "Relief Provided for the Class is Adequate," Given the Risks of Continuing Litigation***

The settlement will provide meaningful relief for the class.  Class members will receive over $19,930 on average.  Warner Decl. ¶ 7.  This payment is a substantial award, given the possible damages available to the class.  Warner Decl. ¶¶ 19-22.  Each class member spent an average of just under seventy-two days working for Defendants. Warner Decl. ¶ 7.

While Plaintiffs strongly believe in the merits of their case, they also understand that there are a number of barriers to recovery should litigation continue. There is a risk that the Court would decertify the class, as requested by Defendants, either now or at trial.  *See* Dkt. No. 219.  There is also a risk that a jury would not find that Defendants' conduct rises to the level of a violation of forced labor, or that Defendants lacked the *mens rea* necessary to commit a violation of forced labor.  *See id.*

Even if Plaintiffs were fully meritorious at trial, that victory could prove pyrrhic.  Plaintiffs' potential damages are largely dependant on emotional distress

damages and punitive damages—emotional distress damages amount to over eighty three percent of potential compensatory damages in Class Counsel's damages model, based on an estimate that a jury would award $400 in damages for each day of a violation, consistent with other trafficking cases. Warner Decl. ¶20; *see also Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 1:18-CV-00030, 2021 WL 2065398, at *16 (D. N. Mar. I. May 24, 2021) ("[C]ourts have awarded plaintiffs between $400 to $800 per day for their emotional distress.").  The size of punitive damages, in turn, depends on the size of the award of compensatory damages.  But the law around awards of emotional distress and punitive damages under 18 U.S.C. § 1589 is still developing, and there is a risk that a jury could award limited emotional distress damages or limited or no punitive damages.  Some cases involving H-2A and H-2B workers awarded $170 to $200 per day in emotional distress damages.  *Leiva v. Clute*, No. 4:19-CV-87-TLS-JPK, 2020 WL 8514822, at *17 (N.D. Ind. Dec. 16, 2020), *report and recommendation adopted*, No. 4:19-CV-87 RLM-JPK, 2021 WL 307302 (N.D. Ind. Jan. 29, 2021); *West v. Butikofer*, No. 19-CV-1039-CJW-KEM, 2020 WL 5245226, at *10 (N.D. Iowa Aug. 18, 2020); *Belvis v. Colamussi*, No. CV 16-544 (JFB)(ARL), 2018 WL 3151698, at *7 (E.D.N.Y. Feb. 20, 2018).  The minimum amount that will be distributed to the class, $458,500, is *more* than the class would receive at trial if the jury awarded emotional distress damages of $170 a day, living expenses of $185 a week, and no punitive damages.  Warner Decl. ¶ 21.

### (iv)   *The Method of Distributing Relief is*
   *Fair to the Class, and Designed to Make it*
   *<u>Easy for Class Members to Receive Payment</u>*

The distribution method is designed to be as easy as possible for class members.  Class members will be able to request electronic payments or checks through a claim form, which can be submitted through the Settlement Administrator's website or mailing it to the Settlement Administrator. Warner Decl. ¶ 9; Settlement Agreement Exhibit A.  If a class member does not fill out a claim form, a check will be sent to the class member's last known address.  Settlement Agreement ¶ VII.C.  The Settlement Administrator is also able to process payments to foreign countries, where some class members now live.  Warner Decl. ¶ 9.

### (v)   *The Maximum Allowable Award of Costs*
   *<u>and Fees is Fair, and Contingent on Court Approval</u>*

The Settlement Agreement authorizes Class Counsel to seek no more than $215,000 in attorneys' fees and litigation costs.  This amount—which will only be paid to counsel if approved by the Court—is eminently fair.  This request, including costs, amount to only 30 percent of the settlement fund, which is "well within the range of reasonable and permissible fees."  *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (finding that attorney's fees equal to one-fourth to one-third of a settlement "reasonable and permissible fees").

### (vi)   *The Settlement "Treats Class Members*
   *<u>Equitably Relative To Each Other"</u>*

Class members are treated equitably vis-à-vis each other.  Under the proposed settlement, the net settlement fund is being disbursed based on a damages

model prepared by Class Counsel in preparation for trial that accounts for fixed

recruitment and travel costs, and variable emotional distress and living expenses damages

based on the number of days a class member spent in Clinton while employed by

Defendants.  Warner Decl. ¶ 8.  The majority of compensatory damages in Plaintiffs'

damages model stem from living expenses and emotional distress damages, which are

dependent on the length of time a class member spent in Clinton while working for

Defendants.  Warner Decl. ¶ 20.  Accordingly, under the Settlement Agreement, class

members will receive a pro-rata share of the net settlement fund based on the number of

days a class member spent in Clinton while employed by Defendants.  Settlement

Agreement ¶ V.F.

    The settlement also allows Class Counsel to request service awards of up to

$15,000 for each of the three named Plaintiffs.  These service awards—to the extent

approved by the Court—do not provide inequitable relief to the named Plaintiffs.

"Courts have recognized that an award may be appropriate to provide an incentive to act

as a named plaintiff."  *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-*

*A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017).  Courts "regularly give incentive awards to

compensate named plaintiffs for the work they performed—their time and effort invested

in the case."  *Id.* at 468.  "Empirical evidence shows that incentive awards are now paid

in most class suits and average between $10,000 to $15,000 per class representative."  *In*

*re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-

md-2785-DDC-TJJ, 2022 WL 2663873, at *6 (D. Kan. July 11, 2022) (quoting 5 William

B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 17:1 (6th ed., Westlaw

updated 2023)).  As discussed above, the named Plaintiffs invested significant time and

effort into this case, including assisting Class Counsel in contacting other class members,

producing documents, being deposed and participating in settlement discussions.  Warner

Decl. ¶¶ 10(b),(e), 11, 12.

*(vii)*   **_There is no Separate Agreement to Address_**

Rule 23(e)(3) requires counsel to address any separate agreements related

to the settlement.  There are no separate agreements here.  Warner Decl. ¶ 4.

## III.    THE PROPOSED NOTICE PLAN IS THE
##         BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(c)(2)(B) requires that for any proposed settlement under Rule

23(b)(3), notice must be "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable

effort."  Permissible means of notice include "United States mail, electronic means, or

other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).  Likewise, due process requires

class members be given notice and an opportunity to be heard.  *Phillips Petroleum Co. v.

Shutts*, 472 U.S. 797, 812 (1985); *DeJulius v. New England Health Care Employees

Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("The legal standards for satisfying

Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are

coextensive and substantially similar.").  The method and manner of notice process is

"left to the discretion of the court subject only to the broad 'reasonableness' standards

imposed by due process."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir.

1975).

The Parties propose notifying Class Members individually and directly via email or mail, using the last known email address or mailing address.  Settlement Agreement ¶ VI.C.  Since class certification, Class Counsel has been in direct contact with twenty-one of the twenty-three class members, and has asked each class member with whom it is in contact whether she is in touch with the remaining members of the class.  Warner Decl. ¶¶ 15, 16.  Class Counsel has also used proprietary databases to search for additional mailing and email addresses for class members.  Warner Decl. ¶ 17.  The Notice is in English, and will have a notice in Tagalog offering assistance through the use of a translator.  Settlement Agreement, Ex. A.  The class notice is written in plain, easily understood language.  *Id.*

In addition to direct notice, the Settlement Administrator will set up a website about the case, and Class Counsel will update its website regarding the case, including posting a copy of the Notice, the prior notice of class certification and the Preliminary Approval Order.  Settlement Agreement ¶ VI.G.  These efforts are the best practicable under the circumstances.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

As set forth in the proposed Preliminary Approval Order, Plaintiffs respectfully propose the following schedule for settlement-related events:

| Event | Proposed Timing |
|-------|-----------------|
| Deadline for sending Notice and Claim Form to Class Members by email or mail and post the Notice and Claim Form on settlement website. | 15 business days after entry of the Preliminary Approval Order |
| Deadline for Class Counsel to file motion for an award of attorneys' fees and litigation costs. | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for receipt of objections or opt-out requests. | 60 calendar days after the Notice is initially distributed to the Class Member. |
| Deadline for filing of papers in support of final approval of the Settlement Agreement. | 28 calendar before the date of the Final Approval Hearing. |
| Deadline for Defendants to file proof of compliance with the notice requirements of CAFA | 7 calendar days before the date of the Final Approval Hearing. |
| Deadline for the Parties to respond to any objections. | 7 calendar days before the date of the Final Approval Hearing. |
| Final Approval Hearing | To be set at the Court's convenience at least 110 days from entry of the Preliminary Approval Order. |

If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for a date 110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the Final Approval Hearing. The remaining dates will be

determined by the date the Preliminary Approval Order is entered, the date the Notice is

initially distributed and the date the Final Approval Hearing is scheduled.

## **<u>CONCLUSION</u>**

For the above reasons, this Court should grant the Plaintiffs' Unopposed

Motion for Preliminary Approval and enter the proposed Preliminary Approval Order.


Dated:  January 26, 2024               Respectfully Submitted,

                                       */s/ Catherine Fisher*
                                       Meghan Lambert (OBA #33216)
                                       ACLU OF OKLAHOMA
                                       P.O. Box 13327
                                       Oklahoma City, OK 73113
                                       Telephone:   (405) 525-3831
                                       Facsimile:   (405) 524-2296
                                       Email:       mlambert@acluok.org

                                       George Warner, Pro Hac Vice
                                       LEGAL AID AT WORK
                                       180 Montgomery Street, Suite 600
                                       San Francisco, CA 94104
                                       Telephone:   (415) 864-8848
                                       Facsimile:   (415) 593-0096
                                       Emails:      gwarner@legalaidatwork.org

                                       Eben Colby, Pro Hac Vice
                                       Catherine Fisher, Pro Hac Vice
                                       500 Boylston Street, 23rd Floor
                                       Boston, MA 02116
                                       Telephone:   (617) 573-4800
                                       Facsimile:   (617) 573-4822
                                       Emails: Eben.Colby@probonolaw.com
                                               Catherine.Fisher@probonolaw.com

                                       Alyssa Musante, Pro Hac Vice
                                       300 South Grand Avenue
                                       Los Angeles, CA 90071-3144

Telephone:     (213) 687-5223
Facsimile:      (213) 621-5223
Email:  Alyssa.Musante@probonolaw.com

Christopher J. Willett, Pro Hac Vice
Caitlin Boehne, Pro Hac Vice
EQUAL JUSTICE CENTER
510 Congress Ave., Ste. 206
Austin, Texas 78704
Telephone:     (512) 474-0007
Facsimile:      (512) 474-0008
Emails: cwillett@equaljusticecenter.org
             cboehne@equaljusticecenter.org

**Attorneys for Plaintiffs**